(Decided 16th June, 1891.)

---

## The President and Managers of the Baltimore and Yorktown Turnpike Road *vs.* Henry Parks.

*Turnpike company—Road out of Repair—Injury to Traveller—Evidence—Insufficient ground of Reversal—Liability of Turnpike company.*

The mule on which a teamster was riding fell into a hole on a turnpike, and the rider's leg was broken. In an action against the turnpike company, to recover damages for the injury, evidence to show that the road was in a dangerous condition several days previous to the accident, is admissible, especially where notice of such unsafe condition was given to the defendant.

Where a witness in his examination in chief, makes a particular statement, which was contradicted, it is no ground of reversal that he reasserted it in rebuttal.

Baltimore and Yorktown Turnpike Road *vs.* Parks.

A turnpike company is liable for injuries to a traveller caused by failure to keep its road in proper repair, without any express statutory provision imposing such liability, which is in no way affected by the fact that the surface of the road was disturbed by the employés of a city for the purpose of taking up water mains in connection with the construction of its water-works, and thereby rendered unsafe.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court. A verdict was rendered for the plaintiff, for $2,000, and judgment was entered thereon. The defendant appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*D. G. McIntosh,* for the appellant.

*John I. Yellott,* (with whom was *M. W. Offutt,* on the brief,) for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellant is a turnpike company, a corporation, owning and controlling a road running through Baltimore County. The appellee is a teamster, who, in using the appellant's road, charges that he was seriously injured, whilst observing due care, by defects in the road, which existed by reason of appellant's negligence. The appellee was riding the saddle mule of the team, and the mule fell and the rider's leg was broken in two places. The claim of appellee is, (and there was evidence tending to sustain the charge), that the mule fell into a hole on the turnpike, which the appellant negligently permitted to be and remain there ; and in falling fell on plaintiff's leg and crushed it. A water main of Baltimore City ran across the pike which the evidence showed had been taken up by Baltimore city men, and the hole

or trench was filled up with stone; and in a few days it sunk, and was, as the plaintiff's witnesses testify, very unsafe.

The plaintiff's father testified that he passed along the road on the Monday preceding the accident sued for; and he was asked what was the condition of the road on that day when he passed over it. The appellant objected, but the Court overruled the objection and allowed the evidence to go, provided witness should state that he notified the gate keeper of its condition. This ruling is the subject of the first exception. The witness testified that it had sunk some on Saturday, but on Monday morning was in a dangerous condition, and he called and notified the gate keeper of its dangerous condition, and that it was not suitable for a wagon to pass over it.

There was certainly no error in allowing this evidence. A defect of that character must have a beginning; and if it existed several days before the accident, and was not mended *after* notice, the *greater* reason for holding the defendant answerable. Being shown to exist on Monday before the accident, it would devolve on the defendant to show that it was corrected before the accident.

The second exception is also to evidence. The defendant having offered evidence tending to show that the mule stumbled and fell before he got to the hole, and that plaintiff had so declared, the plaintiff in rebuttal called a witness who testified that he had known the mule a long time and never knew it to stumble. This testimony was objected to, but the Court overruled the objection, and admitted the evidence that it was not a stumbling mule.

This witness had been on the stand before, and had been asked if he had not told the plaintiff he should "change that mule, that he would kill him yet," and had denied that he had ever said so. A witness was afterwards introduced by defendant who testified to his saying

so to the plaintiff. Being re-called, he again denied having made that statement, and, if there were no other reason for permitting him to state that he never knew the mule to stumble, it was right to let him state that as a reason why he could not have made the alleged statement. But, independent of its being admissible in explanation and refutation of an alleged statement made by him, it was some evidence for what it was worth, that the mule did not stumble before reaching the hole, to show the mule had never been known to stumble. There was therefore no error in this ruling, nor in that made in the third exception, which was to the same point.

The fourth exception was to the allowance of the plaintiff to state in rebuttal whether the mule did stumble. He having in his examination in chief, stated that the mule had not stumbled before, and that he had not warned a person how he rode her, for she would stumble, it was irregular, and not strictly in rebuttal, to allow him to testify again on that point; but in this instance he went further and testified, as the other witnesses in the preceding exceptions, that he never knew her to stumble, which falls under the rule laid down in the second exception. Assuming he had stated the same thing on the examination in chief, it is no ground of reversal that he re-asserted it in rebuttal. No harm could possibly result from it.

The fifth bill of exception relates to the prayers granted and rejected. All the prayers, on both sides, were granted except the fourth of the appellant which was rejected. Although the exception covers the two prayers granted on the part of the plaintiff, no point was made on them in this Court. By the first of these instructions the jury were told that if they found the defendant to be a corporation maintaining a turnpike road and receiving tolls for its use, then it was required to keep its road in a safe condition for the use of persons

who might use the same with ordinary care, and that, if it permitted its road to be in an unsafe condition, and the plaintiff in travelling over it, and using ordinary care, was injured, then the company was liable ; and by the second prayer they were told that the care required of a traveller was "simply such as persons of common prudence ordinarily exercise under similar circumstances."

On the part of the appellant, and at their instance, the jury was instructed, that to entitle the plaintiff to recover the jury must be "satisfied the injury complained of was caused wholly through the fault or negligence of the defendant, without the plaintiff's contributing thereto in any respect, and that if the accident was occasioned by the mule on which the plaintiff was riding tripping itself and stumbling and falling before it got to the trench spoken of in the evidence, then the plaintiff cannot recover under the pleadings and proofs in the case." The following prayer was also granted at defendant's request: "that the defendant, as a turnpike company, is not bound to keep its roadway in the highest possible condition of repair with reference to smoothness of surface, but is bound only to keep the same in reasonable repair, and reasonably safe for travel, having reference to the character of the travel and the neighborhood through which the road passes; and if the jury shall be of opinion that under all the circumstances of this case there was no negligence on the part of the defendant connected with the accident complained of, they must find a verdict for defendant."

There certainly would seem to be no just ground of complaint on the part of the appellant of these instructions given the jury. Those asked by the plaintiff are unobjectionable; while those asked and granted on appellant's part commit the case to the jury in language as favorable as could be possibly asked, if not more so. But the appellant did offer another prayer which was rejected, and of which complaint is made in this fifth ex-

Baltimore and Yorktown Turnpike Road *vs.* Parks.

ception. 'That prayer is as follows: ''If the jury find
that the surface of the defendant's road was disturbed by
the employés of the City of Baltimore for the purpose of
taking up water mains in connection with the construction
of its water-works, and the removal of the mains was by its
authority, and the disturbance of the defendant's° road
was necessary for that purpose, and that the employés of
the city acted with reasonable care and prudence in per-
forming their work; and if the surface of the road after-
wards sunk a few inches by natural causes, then the de-
fendant cannot be held liable for the injury occasioned
by such disturbance and by the subsequent settling of
the earth, if they find such, unless the jury shall find
that the road was thereby'rendered unsafe for travel, and
that the defendant had notice of its condition, or by the
exercise of reasonable care *must* have become acquainted
with its condition before the time of the occurrence of the
accident.''

The rejection of this prayer is no ground for com-
plaint. Its phraseology was calculated to mislead the
jury; and, besides it omitted some important elements
necessary to its proper frame as presenting a good legal
proposition. We are informed that it was specially
excepted to for want of evidence to support it; and though
that exception is not found in the record, as we find a
want of evidence, and the prayer was refused, we may
and ought to presume in justice to the Court below, that
such reason may have influenced their action.

It is the undoubted law in this State, ''that a turnpike
company which derives a revenue from the use of its road
by travellers, is directly liable to those who travel upon
it for injuries occasioned by the want of repair of the road
without any express statutory provision imposing such
liability. In such case the liability to pay tolls is a con-
sideration for the undertaking on the part of the corpo-
ration to furnish a safe road for the use of the traveller

as an equivalent.'' This law was laid down by the Court in *Baltimore & Yorktown Turnpike Road vs. Crowther,* this same appellant, in 63 *Md.,* 564-5. It is the same rule which the Supreme Court of the United States, in *Chicago City vs. Robbins,* lays down, in 2 *Black,* 418, as applicable to municipal corporations having charge of public roads and streets. They are bound to see that they are kept safe for travellers, and if they neglect this duty they are liable. If the injury was the result of a defect occasioned by some other cause and person than the bare neglect of the corporation, the corporation has its remedy over against such party say the Court in *Chicago vs. Robbins.* In *Mayor and City Council of Baltimore vs. O'Donnel,* 53 *Md.,* 115, where the Mayor and City Council sought to escape liabilty because of the neglect of the contractor for repairing certain streets to keep a light to indicate the unsafe condition of the street being repaired, and throw it on the contractor, this Court held the city could not avoid liability in that way. It owed the obligation to the travelling public. It was its duty to see that proper precautions against injury were observed, and if a subordinate omitted a duty, the city was primarily responsible for injury resulting from the neglect. Here the appellant was bound to keep its road in proper repair and safe condition, and if the city authorities; by its permission, did any thing to their road which rendered it unsafe, the appellant cannot shift the responsibility on the city, and escape its primary responsibility for defects occasioned by the city's employés in doing necessary work for the city. The plaintiff had made out a *prima facie* case against the defendant, and it devolved on the defendant to show that it had done all it could to remedy the defect shown to exist on the Monday preceding the accident, and of which defendant's agent in charge of the gate was duly informed. It was the defendant's duty to know there was no defect, and

-there was no obligation on the part of a traveller to notify the corporation of it. If the defence had shown that the defect had been occasioned by causes over which it had no control, and of which it could not possibly, after its occurrence, have been aware, a different question would be presented. No such case is presented here. We need not extend this opinion by considering in detail the various criticisms upon this prayer. We are all of opinion that it was misleading, and did not properly present the law of the case to the jury, and was therefore properly refused. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 16th June, 1891.)