# THE CITY AND SUBURBAN RAILWAY COMPANY *vs.* MINNIE MOORES AND CHARLES L. MOORES.

*Negligence—Independent Contractor—Turnpike Company—Nuisance per se.*

Where work is being done by an independent contractor, and an injury to a third person is occasioned by the negligence of his servants, yet the person for whom the work is done may be liable, if the injury is such as might have been anticipated by him as the probable consequence of the work let out to the contractor, or if it be of such a character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work.

The use of a steam engine on a turnpike road for hauling material to be used in repairs, is not such a nuisance *per se* as would make the Turnpike Company liable to third parties for the negligence of the servants of an independent contractor, having exclusive control of the engine and the work.

W. was employed by a Turnpike Company to grade the roadbed, etc., and also to construct the tracks of the defendant, an Electric Railway Company, on the road. Plaintiff sued the defendant to recover damages for an injury alleged to have been caused by the negligent use of an engine under the control of W. on the tracks of the defendant. *Held,*

1st. That W. was an independent contractor with the Turnpike Company, and the defendant was a party to the contract, if it be found as a fact, that the work was done for it.

2nd. That the use of a steam engine in doing the work under the contracts was not a nuisance *per se*, and neither the Turnpike Company nor the defendant was liable for the negligence of the servants of W., the independent contractor, provided W. employed competent men to do the work, and they were under his exclusive control.

3rd. That if the defendant company was not a party to the contracts between W. and the Turnpike Company, the mere fact that it owned the tracks on which the engine was run would not render it liable to the plaintiff.

Appeal from the Circuit Court for Baltimore County.

The plaintiff alleged that while driving on the Baltimore and Yorktown Turnpike Road her horse was frightened and

made to run away, throwing her out of the vehicle, by the negligent manner in which an engine was used on the tracks of the defendant, an electric railway company. The defendant proved that the engine belonged to and was under the control of one J. G. White, and produced in evidence two contracts between the Turnpike Company and said White, by which the latter agreed to grade, pave and lay tracks on the turnpike according to certain specifications. This work was to be done under the direction and to the satisfaction of the company's chief engineer. At the trial the defendant offered two prayers, which are set forth in the opinion of the Court, and excepted to the action of the Court below (BURKE, J.), in rejecting them. The jury rendered a verdict for $1,200 in favor of the plaintiff, and the defendant appealed from the judgment.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Geo. Dobbin Penniman* and *Milton W. Offutt,* for the appellant.

The President, Managers and Company of the Baltimore and Yorktown Turnpike Road, a corporation of this State, is the owner of a turnpike road extending northwardly from the city of Baltimore, through the village of Towson, to the northern line of the State. On the 10th day of September, 1892, this corporation made a contract with one J. G. White for the construction of a double track electric railway, from Baltimore to Towson, on a portion of the bed of the turnpike. It appears from the evidence that the Turnpike Company was having this work done for the City and Suburban Railway Company, the undisclosed principal in the contract. This work was not completed by the contractor and turned over to the Railway Company until September or October, 1893, two or three months after the accident for which this suit was brought. It will appear from an examination of the contract of construction, that the work of

building this new electric road was to be so done by the contractor, that the construction of the new railway was not to interfere with the running of cars on the railway line already established between Baltimore and Towson. The contract provides that "the contractor shall conduct the construction of the work herein mentioned in such a manner as not to interfere at any time with the operation of the railway lines;" and also provides for the regular road travel on the turnpike. The electric cars of the appellant began running on the railway, as at that time partially completed, but still in the contractor's hands in April, 1893, but the contractor still held the absolute right of way on the tracks for his construction cars. It would therefore appear that on the partially constructed tracks, which were still owned by the contractor, electric cars of the appellant were permitted to be run by the contractor, in pursuance of the clause in the contract above quoted, but in every other way the track was still in the absolute possession and control of the contractor under the terms of the construction contracts, which made him an independent contractor.

The accident was caused by a horse, attached to a buggy, and driven by the appellee, on the turnpike, becoming frightened at a small steam traction engine, which was pulling some cars filled with ballast, both engine and cars being owned by the contractor, and being engaged in the performance of his work under the two contracts set out in the record. The horse was going north and the engine approached, as it ran from the stone quarry near Towson towards him, going south. As the engine drew near the horse, the engine whistle was blown two or three times by the contractor's employee in charge. The whistling frightened the horse and the appellee was thrown from the carriage. There was no evidence offered of any kind to show that the engine was running rapidly, or that it was improperly constructed, or was not of the type usually employed by contractors for such work, or that it was in itself a nuisance.

This is the simple question to be determined, therefore :
Is the appellant liable for the alleged negligence of White,
the contractor.    Is it a case where the rule of the immunity
of the principal from responsibility for the negligent acts of
the independent contractor should apply ?   The employ-
ment is independent when the person rendering the service
represents the will of his employer only as to the result of
his work, and not as to the means by which it is accom-
plished.   *Deford* v. *State*, 30 Md. 179 ; *Wood Railway Law*,
1152 ; *Mechem on Agency*, § 747.

The use of the engine was not a nuisance *per se*.   *Butler*
v. *Hunter*, 7 H. & N. 826 ; *Bailey* v. *Troy, etc., Co.*, 57 Vt.
252 ; *Cunningham* v. *Ry. Co.*, 51 Texas, 503 ; *Wabash, etc.,
Co.* v. *Farver*, 111 Ind. 195; *Macomber* v. *Nichols*, 34
Mich. 212.

*John Grason* and *John S. Ensor*, for the appellees.

The company defendant is bound to keep its tracks free
from danger and dangerous machinery, consistent with its
purpose and in consideration of the rights of third parties,
and it cannot escape responsibility by proving the negligent
act to have been committed by another, when it was
primarily its duty to avoid such an occurrence, having full
knowledge of the character of the cause and its tendency
to endanger others in the exercise of their legal rights.
*Parks* v. *The President and Managers of the Baltimore and
Yorktown Turnpike Road*, 74 Md. 288 ; *Balto.* v. *O'Donnell*,
53 Md, 115. Such is the tenor of railroad law. The prayers
ignore this obligation of the defendant.

The prayers are further misleading in that they ignore
all obligation of defendant arising from the fact that it per-
mitted a stranger to do its work, on its property, for its
present use, profit and benefit, with full knowledge and ac-
ceptance.   The word "control," used in the prayers, is too
general and misleading, as it overlooks the considerations of
permission, benefit, interest, participation and knowledeg
that arise outside of the theory of independent contract, and

also distinguishes it from 77 M.d. 535.   Defendant being
the owner of property upon which men were doing work
authorized by defendant, without contract with defendant,
upon which to rely for defense of independent contractor,
negligence and injury being proved in the course of that
work, makes the party defendant in this case responsible.
*Evans* v. *Davidson,* 53 Md. 248–249 ;  *B. & O.* v. *Blocher,*
27 Md. 277 ; *Boone's case,* 45 Md. 344.

BOYD, J., delivered the opinion of the Court.

This suit was instituted by Minnie Moores and her hus-
band against the City and Suburban Railway Company for
injuries sustained by her through the alleged negligence of
the defendant's agents.   Whilst she was driving along the
Baltimore and Yorktown Turnpike Road her horse was
frightened at a steam engine, which was being used for
hauling cars containing ballast to be put on the tracks of
the Railway Company.   The defendant introduced in evi-
dence two contracts between the President, Managers and
Company of the Baltimore and Yorktown Turnpike Road
and one James B. White, by which the latter contracted to
do certain work for the Turnpike Company, including the
delivery of broken stone to be used in ballasting and back-
filling the railway tracks constructed on the pike, and also
in macadamizing the pike, and claims that the work was
being done under these contracts by White as an indepen-
dent contractor.

The defendant offered two prayers, which were refused by
the Court below, which raise the only questions presented
for our consideration.   The first prayer asked that the jury
be instructed, that if they found there was a contract
between the Turnpike Company and White for doing cer-
tain work upon and adjacent to the bed of said turnpike
offered in evidence ; that said White conducted the work
under the terms of said contract, without any interference
on the part of the Turnpike Company or the defendant in

mode or manner of doing the work ; and that the injury complained of resulted from the running of an engine engaged in the prosecution of the work, which belonged to and was under the control of said White, then the plaintiff could not recover.   The second asked the Court to instruct the jury, that if they found that the Turnpike Company and White entered into the agreements offered evidence to do certain work therein set out ; that in the prosecution of the work White used approved and ordinary machinery, and employed competent and skillful workmen in the management and conduct of said machinery ; that the work was superintended with the usual and ordinary care incident to the same ; that the injury complained of was done during the prosecution of the work in the manner testified to by the plaintiff's witnesses ; that the employees in, on and about said engine were selected and employed by White and were under his exclusive control, then the plaintiff could not recover, although the jury may believe the whistle was blown on the engine as testified to by plaintiff's witnesses.

It will be observed that both of these prayers go upon the theory that White was a contractor to perform the work being done, which resulted in the alleged injury to Mrs. Moores, independent of and free from any control of the company as to how the work should be done, and hence the defendant was not responsible for the negligence of the servants of White.   The general principles applicable to a case where work is to be done by a contractor, upon his own responsibility, who is not subject to the control of the employer as to the manner in which it is to be performed, are so familiar and well-established that it would be useless to go into any extended discussion of them.   The difficulty generally is to determine who is to be regarded as the master of the wrongdoer under the facts arising in the particular case before the Court, and whether there is any such relation existing between the person for whom the work is to be done and the negligent party, as to hold the former

responsible for damages sustained by third persons through such negligence. Even if the relation of principal and agent, or master and servant, do not, strictly speaking, exist, yet the person for whom the work is done may still be liable if the injury is such as might have been anticipated · by him, as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work.

This case presents some further questions, peculiar to itself, from the fact that the defendant is not a party to the contracts offered in evidence, so far as disclosed by them, and in this respect differs from the cases cited in argument. The testimony, however, is that the road was being constructed by White, at the time of the accident, for the defendant, and that the work was done under these contracts. It is true that there was nothing in the record to show just what the relations between the Turnpike Company and the defendant were, or how the latter became interested in the contract.

The Railway Company may have been an undisclosed principal, as contended by the appellant's counsel; the Turnpike Company may have owned the railway tracks when the contracts were made, or it may, as the owner of the turnpike road, have contracted for the work to be done on the railway tracks whilst doing the other work for it mentioned in the agreement, under some arrangement with the Railroad Company. But, however this may be, if the jury believed the work was being done by White under these contracts, we must assume, in order to enable the plaintiff to recover at all, that it was being done for the defendant, and must connect it with the contract. If that be not done, then clearly the defendant is not liable to the plaintiffs, and their only remedy would be against White or the Turnpike Company, if it is not relieved on the ground that White was an independent contractor.

The mere fact that the Railway Company owned the

tracks on which the engine was being run in performance
of those contracts, would not make it liable, and it would not
be connected with the act which caused the injury to Mrs.
Moores, for its mere permission to the Turnpike Company
or its contractor to use the railroad tracks would not make
it responsible. If, for example, White had simply con-
tracted to deliver this stone for the purposes of the Turnpike
Company in macadamizing its road, and the engine was
being used for that at the time of the accident, it could not
be successfully contended that the use of its tracks would
have made the defendant liable. We must, therefore, treat
the defendant as a party to the contracts, at least as a party
having work done for it under them, in disposing of the
prayers. Of course, it was for the jury to determine whether,
as a matter of fact, the work was being done for White
under the contracts, which facts the prayers submitted to
the jury.

One way of testing the liability of the defendant, is to
ascertain whether the Turnpike Company would have been
liable, if it had been sued by the plaintiffs. Under the
law, as settled in this State by the case of *Deford* v.
*State*, 30 Md. 179, and the numerous decisions elsewhere,
many of which are collected together in *Wood on Railroads*
(ed. of 1894), p. 1152, it would seem clear that White was
an independent contractor, and hence the Turnpike Com-
pany would not be responsible by reason of any such rela-
tion as master and servant. But, if that be conceded, the
question arises whether it owed such a duty to the public,
as a Turnpike Company, as to require it to see that no injury
be sustained by persons traveling over its road, through
the negligence of the servants of the contractor employed
to do the work. It was said by the Court in *Park's case*,
74 Md. 282, that this Turnpike Company was bound to keep
its road in proper repair and safe condition, just as municipal
corporations are required to see that their public roads and
streets are kept safe for travelers. In *O'Donnell's case*, 53 Md.
110, the city of Baltimore was held liable for an accident which

resulted from a rope being stretched across the street which was being repaired. A lantern had been hung on the rope but was shortly afterwards broken by some boys and not replaced. The city claimed freedom from liability because the work was being done by an independent contractor, but it was held responsible because of the duty imposed on it to have the work done properly, and have precautions against accident observed. In the case of *Water Company v. Ware*, 16 Wall. 566, the liability of the employer, who owes a duty to the public, either under the law or by contract, is fully discussed, and there are many cases in this country and England on this subject. They are to the effect that "when the employer owes certain duties to third persons or to the public in the execution of a work, he can not relieve himself from liability *to the extent of that duty*, by committing the work to a contractor."

The evidence of Kinsley, the superintendent in charge for White, shows that "the machinery used in and about the work was of the ordinary kind used for such purposes;" and contract No. 2 requires the contractor "to make all necessary connections with present track to run cars to crusher." We think, therefore, that the Turnpike Company had reason to believe a steam engine would be used in the execution of the work. But the use of the steam engine on that road was not a nuisance *per se*, and there was no such obligation on the Turnpike Company to the plaintiff or to the public as to prohibit it from using or permitting it to be used for hauling material for repairs or improvements. There was, therefore, no reason why that company could not make these contracts with White, although it knew he was going to use a steam engine such as this. In *Ware's case, supra*, although the plaintiff's horse was frightened by the alleged negligent use of a steam drill, yet the injury sustained was really caused by the material, dirt, &c., which had been left in the street, and which came within the duty of the defendant to persons travelling on the streets to see that they were kept safe. So in *O'Don-*

*nell's case*, 53 Md. 110. If Mrs. Moores had been injured by
piles of stone or other material negligently left in the road
by the contractor, then a different question might arise.   But
the evidence shows that the injury was sustained by the
negligent use of the engine in not stopping it and in blow-
ing the whistle as she approached.

It would be carrying the obligation of the Turnpike
Company beyond that required or authorized by the
authorities to hold that its duty to the public required it to
see that the servants of White were not thus negligent,
although the use of the steam engine was not a nuisance
*per se* and could be operated so as not likely to do any
injury to any one using the road.   It would be requiring
too much of it to make it take such precautions against
accidents when letting out lawful work to an independent
contractor.   It must be admitted that the work to be done
was lawful and the company had the right to assume that
there would not be such negligence as that complained of,
which was entirely collateral to and not a probable conse-
quence of the work contracted for.   To hold the company
to such a strict liability would practically forbid it from
having such work done by contractors as it would have
to keep its own agents on engines to see that there was no
negligence on the part of the contractors or their servants.

As there was no such duty resting on the Turnpike Com-
pany, it follows a *fortiori* that there was none such on the
appellant.   As we have determined that White should be
treated as an independent contractor with the Turnpike
Company, and that the Railway Company must be re-
garded as a party to the contracts, if the jury found that
the work was being done under them, we think the second
prayer should have been granted.   The first is perhaps too
general, although intended to raise the same question, but
as there was error in refusing the second, we must therefore
reverse the judgment.

*Judgment reversed and new trial
awarded.*