ARTHUR I. BELL *v.* STATE OF MARYLAND, FOR THE USE OF VINCENT TONDI.

*Bailee of Automobile—Not Servant of Owner—Independent Contractor.*

The owner of an automobile, who had placed it in the custody of one conducting a repair shop, for sale by the latter, was not liable for the latter's negligence while driving it to where he was to demonstrate it to a prospective purchaser, though this was by the owner's permission, the repairman being in legal effect an independent contractor rather than the servant or agent of the owner.

*Decided June 10th, 1927.*

Appeals from the Baltimore City Court (SOLTER, J.).

Action by the State of Maryland, for the use of Vincent Tondi, against Arthur I. Bell and John Schwarz. From a judgment for plaintiff, and from an order overruling defendant Bell's motion in arrest of judgment, he appeals. Judgment reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George Ross Veazey*, for the appellant.

*J. Cookman Boyd*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal by Dr. Arthur I. Bell from a judgment recovered by Vincent Tondi, against him and one John Schwarz, for damages sustained by Tondi in the death of his infant son, Fulton Victor Tondi, caused, as alleged, by the negligence of Schwarz in driving a car owned by the appellant.

The appellant not only appealed from said judgment, but likewise from the action of the court in overruling a motion in arrest of judgment, and the questions presented by these two appeals are before us in one record.

The record contains a written agreement by which the parties agreed that "the evidence produced was sufficient to sustain the verdict in favor of the plaintiff, the appellee, against the defendant Schwarz and also against the defendant Bell, providing the proof was sufficient to sustain the finding of the court below, First, as to whether or not the evidence tended to prove that Schwarz was the agent of Bell, and, secondly, as to whether or not the evidence was sufficient to justify the court in finding that Schwarz as a matter of law was the agent of said Bell." It was also agreed that "the only questions submitted to the Court of Appeals for determination * * * are the questions of agency and the action of the court below on the motion in arrest of judgment," and it was further agreed that the evidence bearing

upon the question of agency only should be incorporated in the record, and that all other evidence produced should be eliminated therefrom.

The facts upon which the question of agency is to be determined are substantially these:

About a week before the accident, which occurred on the 26th day of September, 1925, Dr. Bell, a dentist of Baltimore City, was at the automobile repair shop of Schwarz, at 1214 West Saratoga Street, where he had, at times, had repair work done. While there he asked Schwarz if he knew any one who wanted a car of the type of his, and he was told by Schwarz that he did not know of any such person, but that he would be glad to sell it for him. Schwarz then asked Dr. Bell what he wanted for it and he told him $425, and that he, Schwarz, could have all he got for it over that amount. Schwarz told him that he could not get that for it, but he would be glad to sell it and charge nothing for his services.

The car, thereafter, was carried to the shop of Schwarz every morning by Dr. Bell and left standing upon the street in front of his shop and a "For Sale" sign was placed upon it by Schwarz. In the evening the sign was removed by Schwarz and the car carried back by Dr. Bell to his garage. This was done for about a week, when one morning a colored man, seeing the "For Sale" sign upon the car, asked Schwarz what he would take for the car and was told by him $425. The man decided to buy the car if found satisfactory after examination by a friend, who knew something of automobiles, and the man then and there made a deposit thereon of ten dollars, which was to be returned him if he did not buy the car. It was then agreed between him and Schwarz that the latter should in the evening of that day take the car to Columbia Avenue and Bayard Street, so that the friend might see and examine it. Schwarz called up Dr. Bell and told him of the visit of the colored man and that he had in him a prospective purchaser for the car, at the sum of $375. Later, about 12.30 o'clock of that day, Dr. Bell called at the

shop and gave to Schwarz what he supposed was the registration card of the car, and, in a conversation with him at that time, Schwarz told him that he was, that evening, going to demonstrate it to the friend of the man who had been to see him in the morning. Dr. Bell told him to go ahead and do so. As understood by Dr. Bell, if the sale went through Schwarz was to get nothing.

In driving the car to the place agreed upon, where it was to be inspected by the friend of the prospective purchaser, Schwarz ran over and killed the infant son of the equitable plaintiff.

At the conclusion of the whole testimony the defendant Bell asked for a directed verdict in his favor, on the ground that it was shown by the uncontradicted evidence in the case that Schwarz was not his servant or agent, but was an independent contractor, where the relation existing between them was that of bailor and bailee, and from such relation no liability attached to Bell because of the negligent act of Schwarz, resulting in the death of the infant son of the equitable plaintiff. The real question presented by this appeal, as stated by the agreement mentioned, is whether Schwarz was at the time of the accident the servant or agent of Dr. Bell, or whether he was an independent contractor, with the relation of bailor and bailee existing between them, from which, as we have said, no liability would attach to the defendant, Dr. Bell, because of said negligence of Schwarz.

According to the definition substantially adopted by many courts with some variations in language, "an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work," and "the vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control of the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant, if not under such control, he is an independent contractor." 14 *R. C. L.* 67.

As stated in *6 C. J.* 1099: "The relation of bailor and bailee is to be distinguished from that of master and servant, in that property in the hands of a servant is in the possession and control of the master, the servant having only custody, while in the case of bailment the possession and control of the property passes to the bailee during the period of the performance of the contract."

In defining the relation of master and servant, this Court said in *Baltimore Boot & Shoe Co. v. Jamar,* 93 Md. 404: "The relation of master and servant rests upon a contract of service express or implied between the parties, the essential elements of which are that the master shall have control and direction not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will and for proper cause discharge those who serve him. If these elements are wanting, the relation does not exist. *Wood, Master and Servant,* secs. 1, 4; 2 *Bailey, Personal Injuries Relating to Master and Servant,* sec. 3139 *et seq.;* 1 *Shearman and Redfield, Negligence,* sec. 160; 14 *Am. & Eng. Ency. of Law* (1st Ed.), p. 745.

In *Whalen v. Sheehan,* 237 Mass. 112, 18 A. L. R. 972, the owner sent his automobile to one Buckley to be repaired. After making the repairs, Buckley took it out to "tune it up," when the accident occurred. The court there said: "The facts as a matter of law do not warrant the conclusion that the defendant, during the time the automobile was in the control of Buckley, had the right to exercise control and direction over the employment and all its details; in other words had a right to say not only what was to be done, but when and how it should be done. *Baltimore Boot & Shoe Co. v. Jamar,* 93 Md. 404. On the other hand, Buckley was in possession and had full control of the automobile and was in the exercise of a distinct and independent employment, using his own means and methods for accomplishing his work, and not being under the immediate supervision and control of his employer. *Morgan v. Smith,* 159 Mass. 570; *Dutton v. Amesbury Nat. Bank,* 181 Mass. 154. In that case the court held that the verdict for the defendant was properly directed.

In *Segler v. Callister,* 167 Cal. 377, where an automobile was turned over to the keeper of a garage to put in repair for sale, the owner to pay for labor and storage and the garage keeper to have a commission if he sold the machine for a satisfactory price, the defendant was not held liable for injury inflicted by the garage keeper while running the machine on a road to test it. In that case the court said: "We have the case of a man who has turned his automobile over to a mechanic to put it in order. He exercised no control over the work nor over the mechanic in the performance of the work. If, in the due performance of that work, it became proper for the mechanic to take the car out on the street to test it, the owner would be no more responsible for damage which might result from the mechanic's bad management of the car, than he would if the mechanic, without any authority at all, had taken the car and so used it. * * * It certainly needs no citation of authority to show that the owner who has surrendered possession and control of his property under the indicated circumstances to an independent contractor is not legally responsible for the damages which that contractor may occasion in the use of the property."

In *Blashfield's Cyclopedia of Automobile Law* (published in 1927), p. 1364, the author said: "Where an owner of a car delivered it to a dealer, who agreed to make repairs thereon and to sell it for the owner on commission, the dealer was an independent contractor, the means and method of doing the work being left solely to his discretion, and the owner was not liable, therefore, for injuries caused by the negligence of the dealer while driving the automobile to his place of business; and a person in possession of an automobile under an agreement to sell it for the owner for a commission equal to the amount received over a specified price, with no other compensation nor allowance for expenses, has been held an independent contractor so that the owner was not liable for injuries resulting from his collision while in such service with another automobile."

In support of the text the author cites *Potchasky v. Mar-*

*shall,* 211 App. Div. 236, 207 N. Y. Supp. 562, and *Stamper v. Jesse,* 199 Ky. 324.

In *Stamper v. Jesse, supra,* Jesse was the owner of a car, and one Cecil Shuck, who conducted an automobile repair shop and also sold machines on commission, agreed with Jesse to sell for him his automobile. As a result of such agreement, Shuck was asked by Jesse to come after his car and take it to his place of business. At that time Jesse stated to Shuck that certain repairs were necessary and directed him to make such repairs and sell the car. Shuck went to Jesse's home, got the car and the accident occurred on his way back to his place of business. The court in that case said: "The case turns on whether Shuck was Jesse's agent at the time and place of the accident, and, as such, was acting in the course and within the scope of his employment. As we view it, the case is simply one where Shuck was conducting the business on his own behalf. As a part of that business he repaired machines and sold them on a commission basis. As a part of the contract Shuck agreed to come after the machine and take it to his place of business. In other words, the contract contemplated certain results; but the means and methods of doing the work was left solely to the discretion of Shuck. Therefore, when Shuck took possession of the car, he was not subject to discharge by Jesse, or to his direction, supervision, or control in any way whatever. On the contrary, he was his own master, with full power to select his own route, fix the speed of the car, and regulate its movement in any way that he saw fit. It follows that Shuck was not Jesse's agent, but was an independent contractor, for whose negligence Jesse was not responsible. *D. E. Hewitt Lumber Co. v. Mills,* 193 Ky. 443." And the court directed a verdict for the defendant.

In *Potchasky v. Marshall, supra,* one Rushby made an agreement with the defendants to sell a car belonging to them. He was to have for his commission all he could get for the car above six hundred dollars. He was to have no

other compensation and no allowance for expenses. He got
the car at Plattsburg and alone drove it to Mineville, where
he was working in a garage. One evening he drove from
the garage to Wytherbee, where he lived, and while return-
ing to Mineville, the accident happened. He took his trip
for the purpose of selling the car if an opportunity was
presented. At the time, the car was the property of the
defendants, and he was using it under the license and license
plates on the car when he got it. The court below granted
a non-suit on the ground that Rushby was an independent
contractor and that the defendants did not assume to and
could not exercise any control over Rushby in the manage-
ment of the car. The court on appeal in that case held that
Rushby was at the time an independent contractor, saying:
"He (Rushby) took the specific job of selling the car. In
carrying out this undertaking he was independent of the
orders and control of the defendants as to how, when, and
where he should proceed in his efforts to sell the car. In
these respects he acted entirely under his own control and
choice. He was not in their employ and not subject to
discharge by them for the manner in which he did the work.
*Litts v. Risley Co.,* 224 N. Y. 321, 19 A. L. R. 1147; *Thorn
v. Clark,* 188 App. Div. 411; *Rheinwald v. Builders' Brick
& Supply Co.,* 168 App. Div. 425, affirmed 223 N. Y. 572."
The judgment of the lower court, holding that the defendant
was an independent contractor and not liable for the negli-
gence of Rushby, was affirmed.

It will be seen that whether the relation of the parties
is that of master and servant, or employer and independent
contractor, depends upon the facts of each particular case,
determined by the application of the above stated principles.

In the case before us, the appellant, a dentist, was the
owner of a car, or automobile, which he wished to sell.
Schwartz, a proprietor of an automobile repair shop, engaged
in an independent employment, and not in the general em-
ployment of Bell, agreed with Bell to sell for him his car.
The automobile, at the suggestion of Schwartz, was left each

day on the street in front of his garage with a "For Sale"
sign thereon, and in the evening was returned to Dr. Bell's
garage. The possession of the car was left with Schwartz
during each day. The sale of it was to be made by him,
he to use his own means and methods of making the sale,
without the immediate supervision and control of Dr. Bell.
In other words, as stated in *Stamper v. Jesse, supra,* the con-
tract contemplated the sale of the car, but the means and
methods of making such sale were left solely to the discretion
of Schwartz. The contract does not disclose any express
authority to Schwartz to demonstrate the car to a pros-
pective purchaser. This, we think, was not needed. With
the authority to sell, accompanied by the facts and circum-
stances of this case, with no express authority to the con-
trary, there was an implied authority to demonstrate the
car to a prospective purchaser; and, in the exercise of that
authority, he was not controlled or restricted by Bell as
to the routes he should take, nor as to the management and
movement of the car on such occasion. On the contrary, in
respect thereto, he was his own master, with full power to
select his own route, fix the speed of the car and regulate
its movements in any way he saw fit, and his acts and con-
duct on the day of the accident are consistent with such
understanding of his authority, for, before conferring with
Bell, he not only agreed with the colored man, a prospective
purchaser, to demonstrate the car to him and his friend,
but fixed the place, some distance from the garage, at which
the demonstration would be made, without first obtaining
the consent or permission of Dr. Bell to do so. After his
conversation and agreement with the colored man to demon-
strate the car, he called up Dr. Bell to obtain his consent
to sell the car at a sum much less than that for which he
was authorized to sell it. Later in the day, he told Dr.
Bell he was going to demonstrate the car to the prospective
purchaser, and the doctor told him to go ahead. It was left
entirely with Schwartz as to when and where the demon-
stration should be made, or the route that was to be taken
in reaching the place selected by Schwartz, although such

place could have been reached by a number of different routes.

The essential elements in the relation of master and servant, stated by the Court in *Baltimore Boot and Shoe Co. v. Jamar, supra,* to wit: control and direction of the employer, "not only of the employment to which the contract relates, but of all its details," are lacking in this case.

Schwarz was not, in our opinion, a servant or agent of Dr. Bell at the time of the accident, and, as he was not his servant and agent at such time, Dr. Bell was not liable for the loss sustained by the equitable plaintiff in the death of his son, caused by the negligence of Schwarz. Schwarz was an independent contractor and the relation between him and the defendant Bell was that of bailor and bailee, and, in our opinion, the prayer asking that a verdict be directed for the defendant Bell should have been granted. 14 *R. C. L.* 79; *International Co. v. Clark,* 147 Md. 37, and other cases.

There were other exceptions both to prayers and to evidence, but these, however, need not be considered, in view of our decision upon the ruling of the lower court in its refusal to grant the defendant's prayer asking that the case be taken from the jury.

The second appeal raises the question whether or not the motion in arrest of judgment was properly overruled. Any decision of this Court made upon the ruling of the court below on said motion in arrest of the judgment entered upon the verdict in favor of the plaintiff, which under our decision must fall, can serve no useful purpose, although, in our opinion, after an examination of the record, we discover no error in the court's ruling on that question.

The judgment will be reversed without a new trial.

> *Judgment reversed, without a new trial, appellee to pay the costs of the first appeal (No. 18), above and below, and the appellant to pay the costs of the second appeal (No. 19).*

URNER and OFFUTT, JJ., dissent.