STATE, Use of Mary E. Boznango, *v.* BLUMENTHAL-KAHN ELECTRIC COMPANY et al.

[No. 93, October Term, 1931.]

*Decided March 2nd, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*J. Morfit Mullen,* with whom was *Robert R. Carman* on the brief, for the appellant.

*Foster H. Fanseen,* for Sidney C. Blumenthal and others, appellees.

*R. E. Lee Marshall,* with whom was *Herbert M. Brune, Jr.,* on the brief, for Tilghman V. Morgan, Inc., appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment for the appellees, Sidney C. Blumenthal, Abraham Kahn and Chester W. Snyder, individually, and as copartners trading as Blumenthal-Kahn Electric Company, and Tilghman V. Morgan, Inc., rendered in an action brought against them by the appellant, Mary E. Boznango, widow of Michael Boznango, deceased, for the death of the latter, caused, as alleged, by the negligence of the appellees.

Michael Boznango was at the time of his death employed as chauffeur by Mr. John M. Requardt, a member of the

Baltimore bar.  In addition to his duties as chauffeur, he was, under his employment, required to water the lawn of the premises owned and occupied by his employer. On July 5th, 1930, while watering the lawn, Michael Boznango came in contact with an iron rail of a fence on the lawn in front of the house. This rail was electrified, and, as a result of the contact, Michael Boznango was electrocuted.

The dwelling house upon the premises mentioned was a new one and had only been occupied by its owner since the 12th day of June, 1930. It had been built by the appellee Tilghman V. Morgan, Inc., under a general contract with Mr. Requardt, which included the electric wiring of the house, but not the installation of the electric fixtures. These were to be installed by the Blumenthal-Kahn Electric Company under an oral contract made by that company with the owner. The Morgan Company sublet the work of wiring to be done under the general contract to the Snowman Electric Company. This subcontract, an oral one, embraced all of the electrical work to be done under the general contract, the Morgan Company retaining no supervision over the work to be done by the electric company.

The Snowman Company completed all of the electric work which was to be done under the general contract made by the Morgan Company, as claimed by it, on May 27th, 1930. Other electrical work at the building was done by the Snowman Company, but this was not included within the general contract. They subsequently did some work in connection with the furnace and the electric refrigerator, but this was done independently of the Morgan Company.

Included in the work to be done by the Morgan Company under its contract with Mr. Requardt was the extension of the wiring from the house to the posts or standards at each side of the entrance in front of the house. These wires, when carried to the standards, were to be inserted in a rigid conduit or pipe, through which they were to run upward to a point at which the electric fixtures were to be attached. Snowman testified that, under the general contract made by the Morgan Company with the owner, the former was to

carry the wires only to the standards, and that the insertion of the wires in the conduit or pipe could not be done until the character of the piping was determined, and the location of the lantern or fixture upon it established. The pipe or conduit, as he stated, had to be carried up "through the bottom of the fixture and locked in it," and it was not until the design and location of the fixture was determined upon that the height of the pipe could be ascertained; if the wires were inserted in the pipe before such time, and they were found to be too long or too short, they would have to be removed and inserted in a pipe of proper length. Since the wires could not then be inserted in the conduit, the workmen left enough wire to go about one or two feet above the top of the standard and coiled it within the standard, which had an opening of about ten inches. The end of this wire in each of the standards was clipped with pliers, and the insulation was not peeled back therefrom. Snowman's electricians left the current turned off, and unscrewed all fuses and turned off all switches, including the switch to the terrace wires. Robert E. Lee, Mr. Requardt's butler, a witness called by the plaintiff, testified that these wires were coiled in the standards at the time when Mr. Requardt moved into the house on June 12th.

In the certificate of Daniel W. Conway, inspector of electrical installations for the City of Baltimore, dated June 26th, 1930, it is stated that "the electrical work, wires or apparatus as per Application No. 1689, Electric Contractor Snowman Electric Co., occupied or owned by J. Requardt at S. E. St. Paul and Wendover Road—Installation 18 cts 86 outs has been examined and found to be constructed in accordance with Ordinance No. 155, approved June 19, 1908."

On the day of the accident, July 5th, the fixtures on the lawn in front of the house, which were to be designed by Palmer & Lamdin, architects, had not been put in place, although most of the fixtures which were to be installed by Blumenthal-Kahn Electric Company had been installed, and were at the time in use by Mr. Requardt, the owner and

occupant of the house. As far as the evidence discloses, Blumenthal-Kahn Company, up to the time of the accident, had done nothing towards the installation of these fixtures on the lawn.

Robert E. Lee testified that, the day of the accident, Boznango was watering the lawn, and, while he was so engaged, the attention of the witness was directed to him. Boznango at that time was sitting upon the coping or cement, upon which the iron rail or fence was located, and he was, as the witness thought, asleep. Lee placed his hand upon Boznango's shoulder and called to him to wake up. As he did this he felt an electric shock. Then he went into the house and "threw the switch, turning off the electric current." On his return to the scene of the accident he noticed that Boznango was in contact with the iron rail or fence. Then he observed that a wire was lying across the iron rail and in contact with it. Upon inspection he found that this wire led from the standard at the gate, and the insulation at the end of the wire was peeled back and the wire exposed. Mr. Requardt testified that he at one time saw the wire coiled within the standard; but he further testified that the wire, as he recalled it, was on the lawn or coping when he moved into the house on June 12th. The time when he saw it coiled within the standard must have been prior to June 12th and after May 27th, when it was there left coiled by the Snowman Electric Company.

At the close of the plaintiff's testimony, the court, at the request of the defendant Blumenthal-Kahn Electric Company, directed a verdict for that company on the ground that there was no evidence legally sufficient to entitle the plaintiff to recover against it, and upon the rendition of that verdict a judgment was entered for the defendant Blumenthal-Kahn Company.

The case then proceeded against the defendant Tilghman V. Morgan, Inc. At the conclusion of the entire evidence, the plaintiff offered one prayer which was granted. The defendant asked for five instructions. Of these, the first, fourth and fifth were refused, the second granted as offered,

and the third granted with modifications. The plaintiff's granted prayer was the general prayer as to the measure of damages where the jury finds for the plaintiff. The first prayer of the defendant which was refused asked for a directed verdict in its favor.

In substance, the jury were instructed by the defendant's second prayer that, if they found the defendant Tilghman V. Morgan, Inc., had, prior to the accident, completed the work under the contract with the owner, and the owner had accepted said premises and entered into occupation thereof, and was occupying the same at the time of the said accident, their verdict should be for the defendant, even though they found the work of the defendant was defectively done in some particular, and even though the jury found that the accident complained of resulted from the defective manner in which the work was done.

The third prayer of the defendant as modified was to the effect that, should the jury find that the defendant Tilghman V. Morgan, Inc., made a contract with the Snowman Electric Company to do all the work required under the contract, made by the Morgan Company with the owner of the premises, relating to the electric wiring of the said premises; and that the Snowman Company undertook to do such work in consideration of a stipulated sum to be paid therefor by the Morgan Company; and that in the performance of such work the Snowman Company was "to furnish all materials, do all work, and furnish all labor, necessary or required for the performance of said contract; and * * * that the said Morgan Company did not have or exercise, or reserve under its contract with said Snowman Company, * * * any control as to the methods of performance, or the persons engaged or who might be engaged by the said Snowman Company to perform the same, or over the engagement of such persons," then the negligence of the Snowman Electric Company, if any they find, could not be attributed to the defendant Tilghman V. Morgan, Inc.

The plaintiff excepted generally to the rulings of the court in its action upon the second and third prayers of the defend-

ant, and excepted especially to the defendant's second prayer, upon the ground that there was "no evidence in the case that the owner accepted the said premises prior to the accident herein sued on."

The verdict of the jury was for the defendant, the Morgan Company, and a judgment was entered on that finding. An appeal was taken by the plaintiff from the judgments rendered in favor of the defendants.

We will first consider the action of the court in directing a verdict for the defendant Blumenthal-Kahn Electric Company. Assuming that this company was to install the fixtures at the top of the standards at the entrance to the lawn, there is no evidence that they did anything at all in an effort to install them at that point, or that they were guilty of any act of negligence in connection therewith. The wires at the time of the accident were not coiled in the standard where the Snowman Company, subcontractor of the defendant the Morgan Company, had put them, but were upon the lawn or coping and in contact with the railing. But there is nothing to show that they were removed by Blumenthal-Kahn Company, or that they turned on the current. So far as the record discloses we find no negligence of the defendant Blumenthal-Kahn Company from which the injury or loss complained of could have resulted.

In the absence of any disclosed negligence on the part of the defendant, the plaintiff has invoked the doctrine of *res ipsa loquitur*. This doctrine, as stated by Judge McSherry in *Strasburger v. Vogel,* 103 Md. 89, 63 A. 202, 203, "is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident." He then proceeds by saying that one of the two classes of cases where this doctrine is applicable is "where the injury arises from some condition or event that is in its very nature so obviously destructive of the safety of persons or property and is so tortious in its quality as, in the first instance at least, to permit no inference save that of negli-

gence on the part of the person in control of the injurious agency." Citing *Benedick v. Potts*, 88 Md. 55, 40 A. 1068.

The duty imposed upon Blumenthal-Kahn Company under their contract with the owner of the property was to install the fixtures. They were not in control of the premises to any greater extent than to be given the opportunity to do that which they were to do under the contract, and any negligence for which they may be held responsible must be found in their attempted performance of that duty. And if, by the evidence of the plaintiff, it was disclosed that the injury compained of might have been caused either by the defendant's negligence or by the act of another for which the defendant was not responsible, then the doctrine would not apply. *Benedick v. Potts, supra; Strasburger v. Vogel, supra.*

The evidence of the plaintiff discloses that the accident may have been the result of any number of intervening or independent causes. At the time of the accident, the owner of the property was in possession of and was occupying the dwelling house and premises. The current could only be turned on from within the house. It might have been turned on by one of the occupants or employees therein, or by any one of the workmen who had access to the house. The wires at the entrance were not dangerous unless charged, and they might have been charged by any one of a number of persons. The wires, as long as they remained in the position in which they were left in the standard with their ends clipped, were in a safe condition, as the Snowman Electric Company stated, and it was not until they were disturbed that they became dangerous. The evidence does not disclose by whom these wires were removed. They might have been removed either by the defendant, or by some other person.

We find no error in the court's rulings upon the prayer directing a verdict for the defendant Blumenthal-Kahn Electric Company.

We will next consider the action of the court in granting the third prayer of the defendant Tilghman V. Morgan, Inc. By that prayer the jury were told that, if they found certain facts therein contained, then the Snowman Electric Company

was an independent contractor; and if they further found that this company was negligent, and that such negligence was responsible for or contributed to the accident complained of, the defendant the Morgan company could not be held liable therefor. This in our opinion is a correct statement of the law applicable to this case. *Deford v. State, use of Keyser,* 30 Md. 179; *Surry Lumber Co. v. Zissett,* 150 Md. 494, 133 A. 458; *City & Suburban Rwy. Co. v. Moores,* 80 Md. 348, 30 A. 643, 644; *Smith v. Benick,* 87 Md. 610, 41 A. 56; *Symons v. Allegany County,* 105 Md. 254, 65 A. 1067; *Weilbacher v. Putts & Co.,* 123 Md. 249, 91 A. 343; *Bell v. State, use of Tondi,* 153 Md. 333, 138 A. 227.

In 14 *R. C. L.* 67, an independent contractor is said to be "one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work, * * * the vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control of the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant, if not under such control, he is an independent contractor." *Bell v. State,* 153 Md. 336, 138 A. 227. And in defining the relation of master and servant, this court said in *Baltimore Boot & Shoe Co. v. Jamar,* 93 Md. 404, 49 A. 847, 850: "The relation of master and servant rests upon a contract of service, express or implied, between the parties, the essential elements of which are that the master shall have control and direction not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will, and for proper cause discharge, those who serve him. If these elements are wanting, the relation does not exist." *Wood, Master and Servant,* secs. 1, 4; 2 *Bailey, Personal Injuries Relating to Master and Servant,* sec. 3139 *et seq.;* 1 *Shearman and Redfield, Negligence,* sec. 160; 14 *Am. & Eng. Ency. of Law* (1st Ed.), p. 745.

If the jury found the facts stated in the prayer to exist,

there can be no doubt as to the correctness of the instruction that the defendant Snowman was an independent contractor. The determination of the question whether Morgan, the general contractor, was liable for the negligence of the independent contractor in the performance of the duties assumed by it under its contract with the Morgan Company, is next to be considered.

In *Deford v. State, use of Keyser, supra,* the leading case upon this subject in this state, it was said by Judge Alvey, speaking for the court, that "the rule of 'respondeat superior' (which has its existence in the relation of master to servant), does not apply where the party employed to do the work, in the course of which the injury occurs, is a contractor, pursuing an independent employment, and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done. In such case, the workmen employed by the contractor are his servants, and he is liable for any negligence or unskillfulness in the course of their employment, and not the party engaging the contractor to execute the work."

This general doctrine or principle of law is now so familiar and so well established by the many decisions following *Deford v. State, supra,* that it is useless to go into any further discussion of it. There are qualifications to this rule, for example where "the injury is such as might have been anticipated by him (the employer) as a probable consequence of the work let out to the contractor, or if it be of such character as must result in creating a nuisance, or if he owes a duty to third persons or the public in the execution of the work." *City & Suburban Rwy. Co. v. Moores, supra.* But this case, as we view it, does not fall within any of these qualifications.

The plaintiff, as we have said, excepted especially to the defendant's second prayer on the ground that there was no evidence in the case showing that the work done under the

contract with the defendant Morgan had been accepted by the owner of the building.

The work which was to be performed by Snowman, as disclosed by the record, was completed on the 27th of May; and, on the 9th of June, the work to be done by the Morgan Company under its contract with Mr. Requardt was substantially completed. At this time a certificate to that effect was issued by the architects, Palmer & Lamdin, in compliance with the contract. After the issuance on June 9th of the architect's certificate of substantial completion, Mr. Requardt took possession of and moved into the house on June 12th, and thereafter occupied it and was so occupying it on the day of the accident. He testified, when asked if the work was completed when he moved in: "Well, under the contract I should judge it was, but there were so many little things that might happen that Mr. Morgan never questioned, he came back immediately, he is doing it today." And when asked to state whether or not the work was satisfactory to him, he answered, "Oh, absolutely. Mr. Morgan did more really than his contract called for. He did a fine piece of work."

The final certificate of completion was to be issued on July 9th, at which time the final payment was to be made. Morgan testified that, on the 9th of June, "we had several odds and ends to do—to take care of; they were minor matters. The painters and carpenters were there for about a week or approximately until the 19th or 20th of June. * * * And after that, until the time of the accident, or after the accident, there was no one working on the job." He further testified that Mr. Requardt told him on or about the 30th of June "that if I submitted my bill for the house, which was submitted on June 30th, that he would pay us on the 7th of July, and that the house was perfectly satisfactory and we would not have to wait for the thirty days. On the 7th of July we were supposed to receive from Mr. Requardt a check for the final payment. Of course, in the meantime, the accident happened on the 5th, and we never received it (the check) or the final certificate until the 12th of August."

With this evidence in there was, we think, evidence legally

sufficient to go to the jury tending to show that the work done by the Morgan Company was accepted by the owner prior to the accident; and in our opinion the prayer correctly stated the law based upon the existence of the facts therein stated. *Surry Lumber Co. v. Zissett, supra.* It may be said, however, that, if it were held that this, the second prayer of the defendant, was wrongfully granted, it would not affect the decision in this case, inasmuch as the uncontradicted evidence shows that the subcontractor, the Snowman Electric Company, was an independent contractor, and under the law enunciated by the defendant's third prayer the Morgan Company, the general contractor, would not be held liable for any negligent act of the Snowman Company causing the injury complained of. This being so, the case should have been withdrawn from the consideration of the jury under the defendant's first prayer.

As we find no error in any of the reviewable rulings of the trial court, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs to the appellees.*