GREER LINES COMPANY et al. *v.* ROBERTS

[No. 158, September Term, 1957.]

72

*Decided March 5, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*A. Frederick Taylor,* with whom were *Smalkin, Hessian, Martin & Taylor* on the brief, for appellants The Greer Lines Company and The Greer Transportation Company.

*William F. Mosner,* with whom was *W. Albert Menchine* on the brief, for appellant William C. Greer.

*Charles H. Reed, Jr.,* with whom were *Cameron, Close & Reed* on the brief, for appellant John Howard Jarvis.

*W. Lee Harrison,* with whom were *Bernard J. Medairy, Jr.,* and *Richard C. Murray* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

This appeal is by four defendants below in a negligence case brought by the appellee, James W. Roberts, as plaintiff. The case was tried before a judge and jury in Baltimore County, and resulted in a verdict in favor of the plaintiff in the amount of $67,500. From the judgment entered on this verdict, all of the defendants have appealed.

The four defendants were John Howard Jarvis, William C. Greer (Greer), The Greer Lines Company, and The Greer Transportation Company (companies). Jarvis was sued for his alleged negligence and negligence imputable to him, while an employee or servant of the other defendants, who were sued as the employers or masters of Jarvis.

The appellee, Roberts, received serious and permanent injuries to his left leg on June 23, 1955, when he was pinned between the front of a Ford truck and a guard railing on the parking lot of the Bel Air Diner near Bel Air, Maryland. The Ford truck involved in the accident was owned by the appellant, Greer. He used this truck on his farm, and also leased it to the appellant companies for several hours each

morning to "pick up" milk from various farms. When utilized by the companies, it was a feeder-truck, i. e., it and other feeder-trucks gathered the milk from the farms and brought it to the parking lot, where it was placed in larger trucks for transportation to Washington and Baltimore. When the daily "feeder run," as it was called, was completed, the truck remained on the parking lot or was used by Greer on his farm.

Greer was employed as manager by both companies, and received a weekly salary from each. He took orders from his father, who was the president of both companies. In addition to his salaries from the companies, he received from them approximately $200, per month, as a rental fee for his Ford truck.

Jarvis was employed by both companies to drive their trucks and do minor repair work on the equipment used by them, the repair work being a material factor in his employment by them. His work week consisted of reporting every morning at about 6:00 a.m. and driving a prescribed "feeder" route. When this work was completed at about 8:30 a.m., he would drive, on alternate days, a tractor-trailer loaded with milk from Bel Air to Washington. He would then return with the empty trailer to Bel Air, usually completing his day around 5:00 p.m. On the days that he did not drive to Washington, he was supposed to do mechanical work for the companies if they desired, and, if they had no mechanical work for him, then he could do work for Greer or any other person. Jarvis testified he was guaranteed a certain minimum wage by the companies whether he drove the milk truck or did nothing but mechanical work for them. For driving the milk truck he received either $55.00 or $67.00 per week, depending upon the number of trips made to Washington; and, for his mechanical work, he received $1.75 per hour, whether the work was performed for the companies, Greer or anyone else. He also testified that he had done mechanical work on Greer's station wagon or Ford truck, charged the time to the companies, and been paid by them. There were also charge tickets for work done on the Ford truck by Jarvis in the companies' records summoned by the appellee.

The Ford truck, from time to time, needed parts for repairs. When this occurred, the evidence is conflicting as to whether Greer, individually, paid for the same or the companies. There was evidence from which the jury could have concluded that these parts were sometimes paid for by Greer and sometimes by the companies. The parts needed on the day the appellee was injured were charged to one of the companies.

The companies had the same directors, president, management, and leased a part of the parking lot for their business. Greer testified there was no essential difference between them, except one hauled milk to Washington, and the other to Baltimore. He, as manager, handled the operations of both, and gave orders to all employees of both, except when his father, the president of each, was present. The companies used the same equipment and interchanged it frequently. It was Greer's responsibility to make all decisions with regard to the equipment and runs, and it was his duty to see that the drivers were present, to switch drivers when necessary, and to see that the trucks were maintained.

There was evidence to the effect that Jarvis had authority to obtain, when necessary, others to assist in his repair work for the companies, and, on occasions, they had paid for this help.

Roberts was employed by the companies in the early morning to assist in their milk hauling operations, for which he received a weekly stipend. When his work for the companies ceased, usually around 9:00 a.m., he was employed by Greer on his farm; for which he received a weekly salary from Greer. Alvin H. Jones, who will be mentioned later, was not employed by the companies, but was employed by Greer to do work upon his farm, on a part-time basis.

On the day of the accident, Roberts had completed his day's work for the companies, and was waiting upon the parking lot, as a result of Greer's directions, for Greer's return from Baltimore, when Greer was going to take him to the farm to work. Jones, who was seventeen years of age and had never obtained an operator's permit, was also waiting for Greer for the same reason. Before leaving for Balti-

more, Greer requested Jarvis to do some repair work upon the Ford truck. Jarvis began the repair work. He removed the truck from one part of the parking lot to the scene of the accident. The truck needed a new fuel pump and distributor points, and the adjustment of the carburetor, which required the hood to be raised. Jarvis had replaced the fuel pump, and, in order to make the adjustment on the carburetor, asked Jones to start the motor. Roberts, in the meantime, had noticed loose nuts on the front of the truck and a wrench. He proceeded to tighten the nuts and had completed doing so very shortly before the motor was started. Roberts testified he did not hear Jarvis ask Jones to start the motor, and he was unable to see anyone in the seat of the truck because the hood was raised. Jones got into the truck, pushed down on the clutch pedal and started the motor. The motor had run but a few moments, when he released his foot from the clutch pedal preparatory to leaving the driver's seat. When the pedal was released, the truck lurched forward, pinning Roberts' leg between the truck and the guard rail. Jones testified that he did not touch the gear shift at anytime before the truck moved forward. The jury could have concluded that Jarvis had left the gear shift in when he moved the truck to this location.

As there are four appellants and their contentions are not the same, we shall consider their respective claims under the headings of "Jarvis," "The Companies," and "Greer."

## JARVIS

Jarvis abandoned his first assignment of error; so we proceed to his only remaining one. He claims the court erred in refusing to direct a verdict in his favor. He does not contend that Jones was free from negligence, but argues that Jones' acts and conduct were of his own initiative; that Jones was an intervening human agency between Jarvis and the events that brought on the accident; and, therefore, none of Jarvis' acts was a proximate cause of the injuries. He further argues that to hold him liable Jones' acts and conduct must be imputed to him under "some doctrine of law such as

master and servant," and the principle of *respondeat superior* has no applicability to him in this case.

The rule of *respondeat superior* arises from the relation of principal and subordinate, and rests upon the powers of control and direction which the superior has over the subordinate. *Hooper v. Brawner*, 148 Md. 417, 421, 129 A. 672. It applies when the relation of master and servant, employer and employee, or principal and agent is shown to exist between the wrongdoer and the person sought to be charged for the result of the wrong, at the time and in respect to the very transaction out of which the injury arose. If we lay aside entirely the evidence that the jury was entitled to consider with reference to the individual negligence of Jarvis, there can be no doubt that he was answerable for the acts and conduct of Jones, who was acting under his direct and immediate control and supervision, in starting the motor of the truck. *Charles Freeland v. Couplin*, 211 Md. 160, 169, 126 A. 2d 606. There was no error in the trial court's refusal to grant his motion for a directed verdict.

## THE COMPANIES

The companies made two claims: (a) that the appellee was guilty of contributory negligence as a matter of law; and (b) that Jarvis was not the servant or employee of either of the companies at the time of the accident complained of.

### (a)

This Court has so frequently stated the rule as to what constitutes contributory negligence as a matter of law that it would serve no useful purpose to repeat the same. For one of our recent decisions stating the same, see *Meldrum v. Kellam Distr. Co.*, 211 Md. 504, 511, 128 A. 2d 400. In the instant case, the appellee was standing in front of an unoccupied truck that was being worked upon by a mechanic. He had just completed tightening some nuts on the front of the truck. The motor was not running and the hood was up. Roberts testified he did not hear Jarvis ask Jones to start the motor and he could not see inside the cab because of the hood; and that he was standing there and the motor had

started, and "I imagine the truck had been running two or three seconds, and the truck lunged forward." Jarvis testified the truck lurched forward so quickly that he had no opportunity to warn or "shout to" Roberts, and there was nothing that Roberts could do to "get out of the way."

It is unquestionably true that the law places upon one the duty of exercising reasonable care for his own protection under any and all circumstances, but this requirement of the law is little more than what is naturally practiced under the instinct of self-preservation. What an ordinarily prudent and careful person would do under a given set of circumstances is usually controlled by the instinctive urge to protect himself from harm. *Martin v. Sweeney,* 207 Md. 543, 548, 114 A. 2d 825. The present question for our decision then is whether the actions of the appellee, under the above circumstances, were such as to constitute distinct, prominent and decisive conduct about which ordinary minds would not differ in declaring it to be negligent. We think not. We think this question is controlled by the decision in *Sanders v. Williams,* 209 Md. 149, 120 A. 2d 397. In that case, a patron of a gas-filling station was standing in front of an automobile, on which the carburetor was being adjusted. The hood of the car was up and the motor idling. The mechanic gave the motor additional gas to test the idling jet of the carburetor, and the car lunged forward and caught the plaintiff between its bumper and his own. The trial judge instructed the jury that the plaintiff was *free* of negligence as a matter of law and this Court affirmed. In the instant case, the question of contributory negligence on the part of the appellee was left to the jury. If the jury were properly instructed in the *Sanders* case, and it was held they were, surely the companies have no right to complain that the question of contributory negligence in the instant case was submitted to the jury.

(b)

In the consideration of this point, it is well to bear in mind that it is not the function of this Court to weigh the evidence of the master and servant relationship, but it is to decide whether there is any evidence at all legally sufficient to prove

that that relationship existed at the time of the accident. Whether the relation of the parties is that of master and servant, or employer and independent contractor, depends upon the facts of each particular case, and is to be determined by the application of the appropriate principles of law. *Bell v. State,* 153 Md. 333, 340, 138 A. 227. Where the evidence is conflicting upon the subject, or more than one inference can be drawn from the evidence, it is a question of fact for the jury to determine whether the relation of master and servant existed. *Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 585, 119 A. 2d 423; *Maryland Casualty Co. v. Sause,* 190 Md. 135, 57 A. 2d 801; *Keitz v. National Paving Co.,* 214 Md. 479, 493, 134 A. 2d 296, 136 A. 2d 229. In the *Bell* case, this Court defined the relation of master and servant, and, also, who is an independent contractor. In *Sun Cab Co. v. Powell,* 196 Md. 572, 577, 578, 77 A. 2d 783, and the *Keitz* case (see also *Restatement, Agency,* sec. 220) this Court·pointed out certain *criteria* that should be considered in determining whether the master-servant relationship exists; and stated the decisive test is whether the employer has the *right* to control and direct the servant in the performance of his work and the manner in which it is to be done.

The companies contend that there was not a scintilla of evidence to show that Jarvis was in the employ of either of the companies when the accident occurred. They claim that in so far as they are concerned, Jarvis was an independent contractor "once removed" from them. They point out that the truck was owned by Greer; they claim that on the morning of the accident, it had been unloaded and released to him; and it was his duty to repair and maintain the truck. They argue further that Greer, as their manager, had no right to instruct Jarvis to repair the truck for and on their behalf; that Jarvis, with reference to the mechanical work, was a free-lance and could accept or refuse such work as he desired. We do not think the evidence is so clear as to require a finding that Jarvis was an independent contractor in so far as the companies are concerned. We think, under the peculiar circumstances of this case, there was evidence from which

the jury could have concluded that Greer had a right, on behalf of the companies, to instruct Jarvis to repair the Ford truck for the companies. In addition to his regular employment with the companies, they had first call on his work as a mechanic, which was a material element in his regular employment with them, they had paid for parts on the Ford truck and his mechanical work on it before, and Jarvis' income tax return listed the companies as his *only* employers. Also, Jarvis testified that he had not left the parking lot that morning, and, until he did, he was in the employ of the companies and subject to call by them for any mechanical work needed. It was undisputed that Greer, as manager of the companies, had a right to give instructions, on their behalf, to its employees. It was he who directed or requested Jarvis to repair the truck on the morning of the accident. We, likewise, think there was sufficient evidence from which the jury might have concluded that the *right* of control over Jarvis' work existed in the companies at the time of the accident. The truck was still upon the premises leased by them. Jarvis had no place of business of his own in which to make the repairs. He was not free to work upon the truck when he wished and was not entitled to finish the job without being taken off of it. He testified that Greer or his father could have assigned him other work at any time, or instructed him not to use Jones as a helper.

It was suggested by the companies that they could not exercise control over Jarvis because of a lack of knowledge of mechanical work. The right to control may exist, although the ability to control does not. The fact that a particular occupation involves technical skill and training, which put control of the details beyond the capacity of the employer, while a circumstance to be considered, does not require a conclusion of law that no member of a trade or profession involving skill or technical training can be an employee. *Tetting v. Hotel Pfister,* (Wis.), 266 N. W. 249, 251. We, therefore, conclude that the question of whether a relationship of master and servant existed between Jarvis and the companies was properly submitted to the jury.

GREER

In considering the case against Greer as an individual, we are unable to discover sufficient evidence that would have warranted the jury in concluding that Jarvis was his servant at the time of the accident. It was conceded that he owned the Ford truck, and, if we assume it was his duty to make repairs upon it and he requested Jarvis to do so, we think the evidence, as between the two, only discloses a relationship of employer and independent contractor. In *Bell v. State, supra,* 153 Md. at page 336, this Court quoted with approval from 14 R. C. L. 67 that "an independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work," and "the vital test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control of the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer, he is a servant, if not under such control, he is an independent contractor." In the instant case, Jarvis was not in the general employment of Greer. Greer had no right, above anyone else, to call upon Jarvis' services. The repairs were not being done upon Greer's premises or premises leased by him. He had no right as an individual to shift Jarvis to other work, nor did he have the *right* or the ability to supervise Jarvis' work upon the truck. In other words looking at the evidence in the light most favorable to Roberts, Greer had left his truck with Jarvis with instructions to make certain repairs upon it, for which Jarvis was to be paid $1.75 per hour by Greer. Jarvis was at liberty in doing the work to exercise his own judgment and discretion as to the means and assistants that he might think proper, exclusive of the direction and control of his employer. Greer had no further call upon Jarvis' services, but anticipated a completed result, without the right to supervise and control his work. Of course, Greer had the right to instruct Jarvis to cease working upon the truck before the repairs were finished, but this is not controlling. We hold that the trial

court should have granted Greer's motion for a directed verdict. *Woodcock v. Sartle, et al.,* 146 N. Y. S. 540. For other cases in which the relationship was determined to be employer and independent contractor, see *Hood v. Azrael,* 167 Md. 641, 175 A. 666; *Washington News Co. v. Satti,* 169 Md. 489, 182 A. 286; *Globe Indemnity Co. v. Victill Corp.,* 208 Md. 573, 119 A. 2d 423.

Having reached this conclusion, it becomes unnecessary to consider any other questions raised by Greer.

> *Judgment against John Howard Jarvis, The Greer Lines Company and The Greer Transportation Company affirmed with costs. Judgment against William C. Greer reversed without a new trial, the appellee to pay the costs.*