MAUD L. KINNIE, as Administratrix, etc., of FRANK KINNIE, Deceased, Respondent, *v.* TOWN OF MORRISTOWN, Appellant.

Third Department, September 17, 1918.

Highways — town — liability for negligence in maintenance of highways — action for death caused by automobile accident on hill resurfaced with " clay marl " — evidence — expert evidence — imputed negligence — intoxication — liability for accident resulting from common intoxication.

The liability of a town for negligence in the maintenance of highways can only arise from the negligence of its town superintendent.

In an action against a town for death resulting from an automobile accident, which occurred on a hill on an ordinary country road, it appeared that the road had been resurfaced for a width of about seven feet by filling in with " clay marl," on either side of which there was a space of eight feet suitable for teams and automobiles; that this " clay marl " had been rendered slippery by rain for several days preceding the accident, and that the plaintiff's decedent and his three companions were intoxicated.

*Held,* on all the evidence, that the condition of the road was not such as to render the town liable for negligence.

The fact that the superintendent of highways, upon taking office, received a highway manual from the State Highway Department, containing general instructions as to the maintenance of highways, which he followed, was competent evidence. It was also competent to show that he used the " clay marl " upon other hills, and that it was in his judgment the best material for such purpose.

It was error for the court to hold that expert evidence as to the best material to put upon a hill and the best manner of resurfacing was not admissible.

A charge by the court in substance that the negligent and improper management of the car by the one driving could not be imputed to the intestate, was misleading.

If sober men embark in a car on a general drinking scheme and each drinks with, participates in and is the cause of the intoxication of the others, they are all equally to blame if the car is managed by a drunken person, and cannot recover damages which can be traced to the intoxication.

COCHRANE and H. T. KELLOGG, JJ., dissented.

APPEAL by the defendant, Town of Morristown, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 16th day of October, 1917, upon the verdict of a jury for $3,625, and also from an order entered in said clerk's

office on the same day denying defendant's motion for a new trial made upon the minutes.

*Frank L. Scott* and *Robert M. Moore,* for the appellant.

*Spratt & Van Kennen* [*George E. Van Kennen* of counsel], for the respondent.

JOHN M. KELLOGG, P. J.:

It is not at all clear that the town superintendent of highways was guilty of negligence with reference to the highway in question. The liability of the town can only arise from his negligence. The accident happened on August 16, 1915.

The highway was an ordinary country road. At the point in question a ledge of rocks ran across it near the brow of the hill, which made it necessary to fill in below from the foot of the hill up to it, so that it would make a convenient passage. This work was done over forty years ago, and apparently in a very permanent and satisfactory manner. Large stones were filled in, and upon either side a stone wall was erected about four feet high, and upon the stone, and between the walls, smaller stone and dirt, clay marl, had made a good dirt road down the hill. From the outside to outside of the wall was twenty-four feet, and the road had been built so long that the dirt had settled in between the stone so that the structure was very permanent and travel could be had the whole width of the twenty-four feet. The grade of the hill was one foot to thirteen; the road itself was quite flat, with but little crown. From time to time the center of the road became gullied out, and it needed resurfacing, and during the summer in question the town superintendent, to improve the road, resurfaced it, up and down the hill, by filling in clay marl, for a width of about seven feet and to a depth of from two to three inches, the depth being greater in the middle. Similar resurfacing had been done in previous years. On either side of the clay marl there was about eight feet of the road with a hard surface. It was a little rough, but furnished a suitable passage for teams and automobiles. Experience had demonstrated that ordinary dirt or gravel upon such a hill would be washed down the hill by the rains, and that neither was a proper substance, but that clay mixed with the gravel, forming clay marl, made a

binder so that the combined substance would not wash away. The clay marl was found in the roadside near the point in question. The town apparently had no stone crusher or roller; no suggestion is made of any material which would have been more suitable to resurface the center of this road than that used. The defendant, however, has been held liable solely from the fact of such use. The evidence indicates that when clay marl is placed upon a road and becomes wet before it is fully beaten down, it forms a slippery substance, and it was proved here that many drivers of automobiles had difficulty and some were unable to drive their automobiles up this hill on account of this clay marl being rendered slippery by the rain for several days, which had preceded the accident. It is not suggested that any other automobile or conveyance experienced any difficulty in going down the hill, but the evidence shows that many other automobiles and teams went up and down the hill in that condition without any trouble. It is common knowledge that if fresh dirt is put upon a road a heavy rain renders it soft and slippery and it is difficult for an automobile to pass through it, especially up hill.

The defendant offered to prove that two or three days after the accident parties passing over the road in a heavy rainstorm found it hard, with a good surface. This evidence was excluded upon the statement of the plaintiff that the evidence as to the difficulty of automobiles going up the hill was offered for the purpose only of showing notice to the town as to the condition of the road. If that evidence is so limited there is but little if any evidence tending to show that the superintendent was negligent in repairing this road.

The defendant offered to prove that the superintendent, upon taking office, received from the State Highway Department a Highway Manual containing the statutes and containing general instructions as to the construction of highways; that he read and followed the book, and referred to certain pages in the book which he claimed justified his action. This evidence was excluded. A man without particular experience in highway work is called upon, in taking the office of superintendent, to inform himself from the best sources as to how his work should be done, and the fact that the Highway Department furnishes him a book for that purpose is some indication

that the book is founded upon experience and that it is an authority of more or less value upon the subject of which it treats. We think the evidence was competent, and that it was also competent to show that he used this clay marl upon other hills, and his experience with reference to it and, that after his experience or service for eight years, it was in his judgment the best material to put upon hills. It was error for the court to hold that expert evidence as to the best material to put upon a hill, and the best manner of resurfacing a hill, was not admissible.

The plaintiff's intestate was a hotelkeeper at Russell, engaged in the sale of intoxicating liquors. One Howland, a guide who lived at Cranberry lake, came with his automobile to South Russell, stayed over night, and in the morning took with him one Whitmarsh, who resided there and was an observer at Tully Pond Mountain for the State, and went to Russell village, and there Schuyler, a farmer, and Kinnie joined them. They drove to Canton village, Howland claiming to have some business there. From there they concluded to drive to Ogdensburg, about eighteen miles distant, for dinner, and stopped at the hotel at Heuvelton on the way. After dinner they left Ogdensburg, going farther from Canton, but, as they say, intending to go to Gouverneur and from there to Canton. When they left Russell, concededly they were all sober. Evidently Howland was a competent chauffeur. They began to drink beer at Russell, and drank at various places, and the evidence would have justified the jury in determining that they were all under the influence of liquor; were driving recklessly and were noisy. A finding that the accident was the result of the common intoxication would not have been unwarranted. After Kinnie was hurt on the hill the others tried to carry him up the hill and fell down, they say on account of the slippery condition of the road, but it is evident that there was plenty of hard road for them to walk upon and it is quite probable that the falling down was not caused by the condition of the road. The three survivors in the car say that as the car approached the hill it was going at the rate of nine or ten miles an hour before it began to skid, and as it was going down the hill through this new dirt it was going three or four miles an hour, barely crawling along

about as fast as a man would walk, and that all at once the car began to turn around, skidded and went off the embankment, causing the injury from which Kinnie died. The accident occurred in the middle of the day while it was raining. According to the plaintiff's account the automobile slowed down as it approached the clay marl. They evidently had notice of the condition of the road, and if sober could have seen that there was a safe passage on either side of the clay marl.

It is difficult to see how the accident could have happened if the persons in the car were sober and the car was well managed and going at the slow pace indicated. It is probable that if the car was badly managed the mismanagement came from the intoxication of Howland, and there is nothing to indicate that he was any more intoxicated than any other one of the party. The court charged the jury, in substance, that the negligent and improper management of the car by Howland could not be imputed to Kinnie, the intestate. Under the circumstances the charge was misleading; it necessarily left the jury to infer that if the accident came from the intoxication of Howland that fact would not prevent the plaintiff's recovery. The charge practically withdrew from the jury the consideration of the question of intoxication, and that subject was not referred to in the charge or in the request of counsel, and no exception was taken to the charge as made in that respect. Nevertheless the question of intoxication was in the case, and it was a question for the jury to determine whether the accident resulted from the bad road or from the intoxication of the party, and justice requires that the town should not be held liable if the intoxication of the parties in the car caused the accident. If four sober men embark in a car on a general drinking scheme, and each drinks with, participates in and is the cause of the intoxication of the others, they are all equally to blame if the car is managed by a drunken person. It is suggested that Howland had some business at Canton, but the party went to Ogdensburg on a pleasure trip, and when they left Ogdensburg were driving away from Canton on a pleasure trip, and there is evidence tending to show that they were all more or less intoxicated and were using the car in going from place to place for the purpose of having a drink-

ing time.  If Howland had been injured, and the accident had been brought on by his intoxication, it would be clear that there could be no recovery.  Under the circumstances, if they were all parties to the drinking and all were participating in the intoxication of Howland, if he were intoxicated, each would be as much responsible for the car being driven by a drunken person as the driver would be.  It was, therefore, not very material who drove the car, for if the injury resulted from the intoxication of the chauffeur it should be treated as the common act of all and should prevent any one of the intoxicated persons from recovery.  It is a misdemeanor for an intoxicated person to drive an automobile upon a public highway in this State.  (Highway Law, § 290.)  We need not consider whether or not each one of the intoxicated four would be criminally liable under this statute; we are, however, satisfied that none of the party should recover damages which he suffered and which can be traced to the intoxication in which he was engaged.  The jury should have been instructed, in substance, in addition to the charge as made, that if these four men were out in the car for a good time, were stopping from place to place and drinking and became intoxicated, the intoxication of each may be deemed the result of the action of the others so far that none of them could recover for any damages caused by the general intoxication.

In my judgment the condition of the road was not such as to visit liability upon the town.  The negligence of the defendant has not been satisfactorily shown and it does not appear that the plaintiff's intestate was free from contributory negligence.  I, therefore, favor a reversal of the judgment and order upon the law and the facts.

All concurred, except COCHRANE and H. T. KELLOGG, JJ., dissenting.

Judgment and order reversed on the law and facts, and new trial granted, without costs to either party.  The court disapproves of the findings of fact that the defendant was guilty of negligence and the intestate free from contributory negligence.