Ernest H. Snyder for use of Leo Brooks et al., Appellees, v. United States Mutual Insurance Company, Appellant.

Gen. No. 41,608.

338

Heard in the second division of this court for the first district at the February term, 1941. Opinion filed December 30, 1941.

JOHN A. BLOOMINGSTON, of Chicago, for appellant.

TARNOPOL & FLAMM and BEN A. STEWART, all of Chicago, for appellees; IRVING H. FLAMM and SAMUEL B. PEARLMAN, both of Chicago, of counsel.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiffs were occupants of a car with which an automobile owned by defendant Snyder, but driven by Duncan, another defendant, came into collision. There was undisputed evidence that the collision was occasioned by Duncan's negligence in violating traffic regulations. Suit against Snyder and Duncan resulted in several judgments for plaintiffs, aggregating some

$2,100. These judgments were affirmed upon appeal in *Brooks v. Snyder*, 302 Ill. App. 432. The facts in that case are fully set forth in our opinion and need not be repeated here. The United States Mutual Insurance Company, which had issued to Snyder an automobile liability policy covering his car, assumed the defense of that cause under the provisions of the policy, and pursuant to a stipulation between Snyder and the company. It took the position that Snyder was merely Duncan's guest in Snyder's automobile; that he neither directed nor supervised the driving of Duncan, and that the doctrine of *respondeat superior* did not apply so as to make Snyder liable for Duncan's negligence. After reviewing the authorities relied on by the respective counsel, we reached the conclusion that the court properly found Snyder liable for Duncan's negligence, since he had not abandoned his right to control the car and was still the director of the enterprise in which he and Duncan were jointly engaged. Subsequently plaintiffs brought suit against the United States Mutual Insurance Company as garnishee to recover the amounts of the respective judgments rendered against Snyder. The cause was tried by the court without a jury and resulted in a finding and judgment against the insurance company, from which it has prosecuted this appeal.

The policy issued to Snyder covered liability for bodily injuries not to exceed $10,000, and property damages not to exceed $5,000. It is designated by counsel as a restricted coverage policy by reason of the fact that it was sold at a reduced premium. The salient provisions thereof are: "This policy shall be effective only while the within described automobile is being *operated* by the called Assured or any member of his immediate family of legal age to operate a motor vehicle, or by his licensed chauffeur, and the protection hereunder is hereby extended under the same conditions but only to the same extent as avail-

able to the called Assured, to the benefit of any member of the called Assured's immediate family when riding in or operating the automobile described herein with the permission of the called Assured, but shall in no event extend to the benefit of any owner, agent, or employee of any automobile garage, automobile repair shop, automobile sales agency or automobile service station." (Italics ours.)

Defendant takes the position that the italicized word "operated" should be construed in its restricted sense as signifying a personal act in working the mechanism of the motor vehicle or as "driven" by the assured, and that since Snyder was not actually driving the car at the time of the collision, defendant is exempt from liability under the terms of the policy. It is conceded that the only issue involved is whether or not the policy covers the accident in which plaintiffs were injured, and that the determination of that issue in turn depends upon the interpretation to be given the word "operated" as used in the policy.

Defendant contends that because of the reduced premium the restricted coverage is limited to instances where the automobile is being operated, or as he argues, driven by the assured, or by any member of his immediate family of legal age, or by his licensed chauffeur; and that since neither Snyder, nor any member of his family, nor his licensed chauffeur was actually driving the car, defendant is exempt from liability.

In support of its argument that the term "operated" should be interpreted in its restricted sense, defendant relies on *Witherstine v. Employers' Liability Assur. Corp., Ltd., of London, England,* 235 N. Y. 168, 139 N. E. 229, which was decided by a divided court in 1923, prior to the time that the legislature of New York in 1924 enacted section 282-e of the Highway Law which bound the owner of the car for negligent operation of the vehicle by any person using or operat-

ing it with the permission of the owner. As in the case at bar, execution was returned unsatisfied and suit was thereafter brought against the insurance company. A policy had there been issued to Charles Dunn whose car, occupied by him, his wife, two children and a friend, Albert Ridell, collided with an automobile owned and driven by the plaintiff, Witherstine. In an action against Dunn and Ridell to recover for personal injuries and damage to his car, Witherstine had a verdict and judgment against both defendants. The insurance company, upon notice of the commencement of the suit and a request to defend, declined to do so, on the ground that the damages were not covered by the terms of the policy. The case presented a construction of a clause or rider attached to the body of the policy as follows: ''In consideration of the reduced premium at which this policy is written, it is stated by the assured (which statement is accepted by the corporation as true) that the automobiles described therein are and will be used *only for private purposes.* Private purposes shall include personal pleasure and family use, excluding the regular and frequent use for business or professional calls and excluding commercial delivery. It is further agreed that *this Policy shall apply only while the said automobiles are being operated by* CHARLES DUNN *(who is the owner and the named Assured),* or while the automobiles are being *operated by a person connected with* a repair shop or garage in connection with repair work, testing, delivering or calling for said automobiles.'' Defendant contended that the proper meaning to be given to the words ''operated by owner for private purposes only'' was what is commonly known as a ''one-driver'' clause, and that since the policy was issued at a reduced rate by reason of the fact that the car was to be operated only by the owner, the insurance company was not obliged to defend and did not become liable under its contract of insurance. In interpreting

the word ''operate'' the court cited several sections of the Highway Law wherein that term was used as signifying a personal act in working the mechanism of a car and concluded that by reason of the analogy to provisions in the act, ''the word 'operate' seems to have acquired a definite meaning.'' One of the dissenting judges, however, in whose brief opinion one of his colleagues concurred, stated that ''One of the common and ordinary meanings of the word 'operate' is 'to direct or superintend the working of' '' and concluded that since the defendant had prepared the policy and used the word, it should be given the broadest meaning in favor of plaintiff and not be interpreted in its restricted sense. Subsequently, in *Arcara v. Moresse,* 258 N. Y. 211 (1932), the same court, by a unanimous opinion, held that the owner ''operated'' the car, although another was lawfully driving it, pointing out that the decision in the *Witherstine* case was based on the fact that there ''Obviously the word [operated] is used in the policy in the same sense in which it is used in the Highway Law,'' and there was involved in the Highway Law ''a word combination'' which required a narrower interpretation of the term ''operated'' because as said in the *Witherstine* case, ''If the meaning were extended to include an owner acting either by himself or by agents or employees, the provisions of the Highway Law would be replete with repetitious jargon.''

The facts in the *Arcara* case are similar to those in the suit at bar, and we think the principle involved is applicable to this proceeding. The owner in that case had loaned his car to his nephew Maggio for his personal use. At the time of the collision Maggio was in the car but it was being driven, with his permission, by his friend Barone. The owner was not in the car at the time of the accident, and the question presented was whether the owner was liable under a statute which imposes liability on the owner for injuries

"resulting from negligence in the operation of such motor vehicle . . . by any person legally using or operating the same," with the owner's permission. The court was of opinion that although Barone, who had not been authorized by the owner to drive, was at the wheel, Maggio was legally "using the car" and that the owner, therefore, "operated" the car through Maggio.

The only other case cited by defendant in support of its interpretation of the term "operated" is *State Farm Mut. Automobile Ins. Co. v. Coughran,* 92 F. (2d) 239, 303 U. S. 485. However, that case affords no help to defendant because the court held that "to operate" an automobile does not necessarily imply personal physical handling of the wheel, and although the case was decided in favor of the insurance company, the decision rests on the fact that a minor, forbidden by law from driving, was in fact driving at the time of the accident. This was specifically prohibited by the provisions of the policy and the violation thereof relieved the insurer.

Plaintiffs cite the recent case of *Neel v. Indemnity Ins. Co. of North America,* 122 N. J. L. 560, 6 A. (2d) 722, in support of their contention that the clause under consideration should be construed in its broader sense. An insurance policy there issued to an automobile sales agency covered the liability of its prospective customers "while riding in or operating" its automobiles. An accident occurred while a car was being tested by a customer's son. The father was not riding in the car at the time, and the case therefore resolved itself into an interpretation of the word "operating." In discussing the question the court called attention to the fact that the insurance contract was drafted by the defendant independent of the statute and that in the preparation thereof plaintiff had no part; that "In such liability insurance there is more than the interest of the assured, whether named

or unnamed. There is the interest of the potentially damaged person whom, for the want of a more accurate word, we may designate as the public; and his *status,* in certain respects, is a matter of public policy. [Citing case.] Where there is ambiguity in a contract the rule is that the construction should go most strongly against the writer . . . , and our courts have also held that in suits against an insurer for liability arising out of automobile accidents the language of the policy should be construed liberally in favor of the assured and of injured persons." In conclusion, the court pointed out that if the insurer had intended to assume the more limited liability for which it contends, and for which the defendant in the case at bar likewise contends, it could by its contract have narrowed its obligation, and that if it had intended to do so it would have phrased its agreement in words more restricted than those employed.

In *Mulconery v. Federal Automobile Ins. Ass'n,* 230 Ill. App. 236, it was held that a statement in a schedule of warranties that the insured automobile is operated only by the insured, members of his family and his duly authorized employees, does not restrict the operation of the car during the life of the policy to the persons mentioned, so as to defeat a recovery under the policy for a loss sustained in an accident which occurred after a person not in the class named had been driving, but while the son of the owner was operating the car. Although other questions were considered by the court in affirming the judgment of the trial court, the question under consideration received the attention of the court.

Defendant's entire argument is predicated on the assumption that this is a restrictive clause and that its purpose is to define and limit the meaning of the word "operated" to "driven." Whatever restriction the insurance company may have intended to include in its contract of insurance, it is evident that its principal

purpose was to designate persons in addition to Snyder who would be entitled to the benefit of the insurance protection, whether driving or operating or riding in the automobile. We think the reasonable interpretation to be placed on the clause is that it was intended to designate all the persons who are entitled to the benefit of the insurance. Snyder would, of course, be the one primarily protected, and in addition thereto the members of his immediate family and the licensed chauffeur are designated "as additional assured," and therefore entitled to the protection of the policy. Under the omnibus clause in the policy, coverage is extended to the assured's family while driving. From this it would appear that if Snyder's wife or son were sitting in the back seat while the car was being driven by a friend, they would be fully protected, for under that clause coverage is extended to "any member of the called Assured's immediate family when riding in or operating the automobile." And if the term "operate" is to be construed in its narrow sense, as defendant contends, the owner Snyder, who pays for the policy, primarily for his own protection, would actually be receiving less protection thereunder than members of his family.

Aside from these considerations, we think our former opinion (302 Ill. App. 432) has a binding effect upon defendant to the extent of our conclusion that there had never been a contractual surrender of the car by Snyder at the time of the accident and that he never relinquished the direction and supervision thereof. The opinion was to the effect that Snyder was constructively driving the car, although Duncan sat at the wheel performing the mechanical operation. Our conclusion was based upon the authority of numerous decisions holding that the car owner who sits alongside the driver and has made no "contractual surrender" of the car is, in effect, "the operator" of the car, and this distinction between the term "driver"

and ''operator'' has frequently been recognized. *Reetz v. Mansfield,* 119 Conn. 563, 178 Atl. 53; *Grubb v. Illinois Terminal Co.,* 366 Ill. 330.

When plaintiffs originally sued for damages resulting from the collision, defendant elected to defend the cause. It could have declined to do so, as the insurance company did in the *Witherstine* case, but it evidently regarded the accident as one which was covered by the policy, unless it could prove, as it attempted to do upon the original trial, that Snyder was a guest in his own car. In *Employers' Liability Assur. Corp. v. Chicago & Big Muddy Coal & Coke Co.,* 141 Fed. 962, the court said that the act of the insurer in taking over the defense ''is such a construction of the policy, by contemporaneous acts, as estops [the insurer] from denying liability, now that that action is at an end.'' Moreover, in defending the original suit the insurance company evidently placed its construction on the term ''operate'' as being much broader than it is now willing to concede, and it should now be held to the practical construction which it placed on its own policy.

We think the authorities amply support plaintiffs' contention that this policy should be liberally construed so as to render defendant liable and the judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*

SCANLAN, P. J., and SULLIVAN, J., concur.