SMITH *v.* BRANSCOME, ET AL.

[No. 340, September Term, 1967.]

584

*Decided December 5, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*C. MacNair Speed,* with whom were *Frederick J. Green, Jr.* and *Lord, Whip, Coughlan & Green* on the brief, for appellant.

*Everett L. Buckmaster,* with whom were *George W. White, Jr., Samuel D. Hill, David D. Patton* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The appellees, Arnold Lee Branscome and Arthur X. Minnick, as the original plaintiffs below, filed an action in the Circuit Court for Harford County against the appellant, Milton O. Smith (Milton), his brother William Kennard Smith (William) and Raymond Lee Green (Green) to recover for

personal injuries resulting to both plaintiffs and for property damage to Branscome's automobile allegedly caused by the negligent operation of Green's automobile on Route 22 near Fountain Green, Harford County on October 31, 1964, at about 6:50 p.m. On July 1, 1966, the lower court permitted the joinder of Selected Risks Insurance Company as an equitable plaintiff so that it could assert its right of subrogation as the insurance carrier for Branscome to the extent of the net amount of $2,390 which it had paid for property damage to Branscome's automobile resulting from the accident. The trial court (Day, C.J.) declined to submit the case to the jury on issues as authorized by Maryland Rule 560, but instead directed a verdict in favor of Green and submitted the case to the jury generally in regard to the defendants Milton and William. The jury returned general verdicts against Milton and William for $5500 in favor of the plaintiff Branscome, for $2000 in favor of the plaintiff Minnick, and for $2390 in favor of Selected Risks Insurance Company, the equitable plaintiff. The trial court overruled Milton's motion for a judgment n.o.v., or in the alternative, for a new trial, and from the judgment absolute entered upon the verdict against Milton on October 24, 1967, Milton filed a timely appeal to this Court. William did not appeal.

Milton met Green between 10:00 and 11:00 a.m. on October 31, 1964, on the parking lot of Hannah Moore's Bar in Bel Air, Harford County. Green told Milton that Green's automobile had defective brakes which caused the car to pull to one side and asked Milton to trade automobiles as Green wanted to drive to Baltimore. Milton agreed to the exchange of automobiles. Green gave Milton the keys to his automobile and drove to Baltimore in Milton's car. Immediately thereafter Milton went into Hannah Moore's Bar and began drinking beer and whiskey. He was joined at that bar at about 3:30 or 4:00 p.m. by his brother William who drank with him. Milton testified that he remembered placing his television set in the Green automobile sometime during the day and locking it up and that later he entered the Green automobile and had gone to sleep. He was intoxicated and stated that he had no recollection of leaving Hannah Moore's.

William also became intoxicated. His license to operate a

motor vehicle had been previously revoked and on the day of the accident he had no license to drive an automobile. He testified that prior to leaving the bar, he got in the back seat of the Green automobile and went to sleep, and that it was dark when Milton and Robert Brooks came to the Green automobile and woke him up. He testified that when they left the parking lot of the bar, Milton was driving and Brooks was on the right-hand side on the front seat. He also stated that Milton told him the day after the accident that Milton was driving, that he had asked Milton to get the matter cleared up and that Milton said he would. State Trooper Ensor, who investigated the accident, testified that the Green automobile had crossed the center line of Route 22 to strike the Branscome vehicle. The occupants of the Branscome car were sober, the occupants of the Green vehicle were "apparently all under the influence." He further testified that in the Harford Memorial Hospital he asked William who was driving and William replied, "I was." Trooper Ensor had also discovered that the Green automobile had made a stop at the Fountain Green Food Market prior to the accident.

State Trooper Reith, who although off-duty at the time happened to be passing the scene of the accident enroute to the Harford Memorial Hospital to visit a friend, arrived at the scene three or four minutes after the accident occurred. He testified that when he arrived, William was behind the wheel of the Green automobile, slumped to the right toward the passenger side, Milton was next to him on the right and Brooks was out of the car, having been thrown from the vehicle by the force of the impact. The car "reeked with intoxicants. * * * I had trouble administering any first aid to any of the parties involved, due to their conditions, and I couldn't get anything verbally out of them."

Milton testified that he was "good and drunk" and that the day after the accident he had gone down to the State Police Barracks and "told them I was driving." On cross-examination he testified that he made this statement to the police "Because my brother, he called me and told me I was." He later testified that he did not know who was driving the Green automobile as he knew nothing about having the accident.

Milton was not injured as a result of the accident. William suffered a laceration of his face and his chest and the upper part of his stomach was bruised. Trooper Ensor testified that there had been damage to the steering wheel of the Green automobile and there was some blood on the steering wheel, thereby drawing the inference that William must have been behind the wheel at the time of the accident.

Counsel for Milton filed motions for a directed verdict as to him at the end of the plaintiffs' case and at the end of the entire case on the ground that there was no evidence legally sufficient to indicate that Milton was the operator of the Green vehicle. The trial court, on each occasion, denied these motions, and at the end of the case instructed the jury, in part, as follows:

> "Now, in this case, if you find that the control and possession of the automobile had been given by the owner, Green, to Milton Smith, that William Smith was driving at the time of the collision, and that Milton Smith was riding in the vehicle and that both were intoxicated, then the verdict must be against Milton Smith as well as against William Smith."

Counsel for Milton excepted to this portion of the charge to the jury "for the reason that that is not the law of the State of Maryland, that a person who has been loaned an automobile by someone else does not place upon that person the burden or the right of control. The right of control remains with the owner alone, and this cannot be shifted to someone else merely because they are using the automobile. * * * He [Milton] had no right of control. He merely was borrowing a car from someone else, and if another person is driving that automobile there is no imputation of negligence to him under the Maryland law."

In rendering the verdict against Milton and William, the foreman of the jury stated "We find William Smith to be the driver" and "we find Milton Smith guilty of negligence." The verdicts were entered as general verdicts against Milton and William in favor of the respective plaintiffs in the amounts heretofore set forth.

Milton, the appellant, presents two questions for our decision:

(1) Did the trial court err in refusing to grant Milton's motions for a directed verdict?

(2) Did the trial court err in permitting the jury to consider the imputation of negligence to Milton?

We have concluded that the trial court did not err in either regard and the judgments against Milton will be affirmed.

## (1)

In our opinion, the trial court properly refused to grant Milton's motions for a directed verdict on at least two grounds, i.e., (a) there was direct substantive evidence from which the jury could find that Milton was driving the Green automobile, and (b) there was evidence from which the jury could conclude that Milton was responsible even though he was not personally at the wheel of the Green car at the time of the happening of the accident.

## (a)

As we have already indicated, William testified that when he and his brother, Milton, left the bar in Bel Air in the Green automobile, William was in the back seat and Milton was driving the vehicle. He also testified that the day after the accident, Milton told him that Milton was driving. Milton stated that the day after the accident, he told the State Police that he was driving. Milton never *denied* that he was driving at the time of the accident; he merely stated that he did not know. Milton also did not deny that on the day following the accident he told William that he, Milton, was driving. Although there was evidence that at the hospital following the accident, William told the state trooper that he (William) was driving and that "they had been out on a party," William testified at the trial that he was not driving when the accident occurred and did not know who was driving.

In our opinion, there was legally sufficient evidence which would have supported a finding that Milton was the driver of the Green automobile and this question was properly submitted to the jury. Milton contends that his admission the day after the accident that he was the driver of the Green automobile does not have "any substantive or independent testimonial value" in that such testimony may only be used to impeach the

witness and may not be treated as substantive evidence as an admission against interest. Although Milton's contention would be correct if applied to an ordinary witness in a case, it is not correct when applied to the admissions against interest made by a *party* opponent in a case. Milton was a party of the record to the case and any declaration made by him against his interest is receivable in evidence to prove the truth of the matter admitted by him as a party. As Judge Markell, for the Court, in *Lambros v. Coolahan,* 185 Md. 463, 468, 45 A. 2d 96, 98 (1945), aptly stated:

> "* * * oral admissions of a party 'are universally deemed admissible' and legally sufficient to prove facts admitted. Wigmore, Secs. 1048, 2075."

In *Terry v. O'Neal,* 194 Md. 680, 72 A. 2d 26 (1950), this Court held that a statement to the police by the defendant after an automobile accident that he was driving the car was legally sufficient to prove the fact admitted by the defendant, citing with approval and following *Lambros.* In *Joppy v. Hopkins,* 231 Md. 52, 188 A. 2d 545 (1963), an automobile accident case, we held that a prior statement by the plaintiff was admissible both to impeach her testimony and as an admission against interest, citing with approval and following both *Terry* and *Lambros.* See *Kantor v. Ash,* 215 Md. 285, 290, 137 A. 2d 661, 664, 69 A.L.R.2d 585, 590 (1958) ; *Tellez v. Canton R. R. Co.,* 212 Md. 423, 431, 129 A. 2d 809, 813 (1957) ; *Hynes v. Wilson,* 147 Md. 360, 363-64, 128 A. 70, 71 (1925) ; and *Bartlett v. Wilbur,* 53 Md. 485 (1880).[1] See also 4 Wigmore, *Evidence* § 1048 (3rd Ed. 1940), McCormick, *Evidence* § 239 at 502-04 (1954), 29 Am. Jur. 2d *Evidence* § 600 at 655-56 (1967) and 31A, C.J.S. *Evidence* § 272 at 697 (1964).

Milton relies on a dictum in *West v. Belle Isle Cab Co.,*

---

1. Our predecessors in Bartlett stated: "There is a wide difference between the declarations of an ordinary witness, a stranger to the suit, and the declarations of a party to the record. The former are admissible only for the purpose of impeaching or contradicting the witness, but the latter being the admissions of the party to the suit may be offered to prove the truth of the matters thus admitted. 1 Greenl. Ev. sec. 171." (53 Md. at 497-98.)

203 Md. 244, 100 A. 2d 17 (1953) for his contention that the disputed evidence cannot be treated as having any substantive weight. Judge Hammond stated there:

> "[T]he general rule is that prior statements which are produced at the trial to impeach a witness are not probative evidence but may be used only for impeachment." (203 Md. at 253, 100 A. 2d at 21.)

As an abstract statement, this is undoubtedly a correct statement of the law, since Judge Hammond specifically referred to a "witness" and not a "party." Further, in the next sentence he refers to Wigmore, *Evidence* § 1018 (3rd Ed., Vol. III), as support for this rule. Significantly, this section refers only to impeachment of witnesses by "Self-Contradiction" and as to parties, Wigmore has an entirely separate section, entitled "Admissions", which clearly indicates that the two topics are to be considered as separate and distinct. See 4 Wigmore, *Evidence* § 1048 ff. (3rd Ed. 1940).

Milton contends, however, that in the context of the *West* case, the above statement was meant to refer to a party. We believe that a closer analysis of that case reveals that it provides no support for the appellant's position. The evidence in question there was a statement in a report filed by the driver of the defendant's cab with the Public Service Commission. In describing the occurrence of the accident, he stated "She [the plaintiff] claims she walked from the west side to the east side of the cab and had walked into same." On appeal from a jury verdict in favor of the defendant, plaintiff claimed that the trial judge made several errors in his instructions, among them, failing to instruct on the issue of last clear chance and failing to tell the jury that they could find primary negligence from the testimony of any witness on either side. It was claimed that the above statement, if substantive evidence, would have been the basis for a theory of recovery which the jury had not considered, i.e., that the plaintiff, although out of the crosswalk, had been crossing the street from the far side so that the cab driver should have seen her, contrary to all of the other evidence that she walked out directly into the lane in which the defendant's cab was proceeding.

The circumstances under which the statement in question was admitted into the case do not appear in Judge Hammond's opinion, but we believe that this should make no difference. If the plaintiff had originally offered the statement to impeach the cab driver, then it would have, in fact, been a statement of a witness and not of a party, and accordingly, should not have had any substantive weight. If, on the other hand, it had been offered by the defendant to impeach the plaintiff's other testimony that she was crossing at the crosswalk, then the statement cannot be considered a prior inconsistent statement by the plaintiff. The extra-judicial declarant would then be the operator of the cab who had stated that the plaintiff had made the alleged inconsistent statement. The result of this would be that the statement was double-hearsay, an out-of-court statement allegedly made by the plaintiff and repeated out-of-court by the driver. In effect, it is a self-serving declaration by the driver that created the inconsistency, and it was certainly proper for Judge Hammond to indicate that it should not be given any substantive weight.

Also, it is important that it was the plaintiff who was claiming that substantive weight, *in her favor,* should be given to a prior inconsistent statement of her own. Certainly, this is quite different from the normal situation of an admission by a party being used substantively *against* him. As Professor Wigmore points out:

> "[T]he party's testimonial utterances do *not* pass the gauntlet of the Hearsay rule when they are offered *for* him (unless they can satisfy some exception to that rule) ; but * * * they do pass the gauntlet when they are offered *against* him as opponent, because he himself is in that case the only one to invoke the Hearsay rule and because he *does not need to cross-examine himself.*" (4 Wigmore, Evidence § 1048 at 3 (3rd Ed. 1940).) (Emphasis in original.)

In any event, it is clear Judge Hammond's language is dictum, as he found not only that the trial judge's instructions actually covered all of the points which plaintiff claimed were left out,

but he also found that there was nothing in the above statements inconsistent with the plaintiff's other testimony.

Nor do we believe that we should consider as authoritative the language in *Sun Cab Co. v. Cusick,* 209 Md. 354, 121 A. 2d 188 (1956) where Judge Delaplaine stated that a prior statement of a witness may be used for impeachment purposes but not as substantive evidence, in referring to a witness who was also a party. Clearly, this is dictum as the Court's holding makes it clear that even if the allegedly inconsistent statement were the truth, it would have no effect on the liability of the parties, but also points out that the physical evidence conclusively shows that the statement could not have been true, and in any event, the Court indicated that it .was very doubtful the defendant ever made the statement at all. We believe we need only recognize that we agree, as an abstract proposition of law, that a "statement made by a witness prior to the trial is admissible for the purpose of impeaching the witness, but not as substantive evidence," 209 Md. at 361-62, 121 A. 2d at 191, and it is not necessary for us to attempt to determine exactly what Judge Delaplaine intended in applying this language to the facts of the *Cusick* case.

(b)

In any event, however, there was evidence from which the jury could conclude that Milton was responsible even though he was not personally at the wheel of the Green car when the accident happened.

It is clear from the evidence that either Milton or William was the driver of the Green vehicle. We have indicated that there was sufficient evidence to support a finding by the jury that Milton was personally at the wheel, but there is also evidence which would justify a finding by the jury that William occupied that position. If it be assumed for the purpose of argument that William was personally at the wheel, Milton was nevertheless present in the Green automobile of which he had possession and control as a bailee of Green. Milton and his brother William were on a drinking party. Not only was William intoxicated but it would also be illegal for him to drive as his operator's license had been previously revoked. There is little question, therefore, that the automobile was being unlaw-

fully operated. Code (1957) Article 66½, § 86 prohibits the driving of a motor vehicle on Maryland roads by any person (other than those exempt) not having a valid driver's license and § 206 makes it unlawful for any person to operate a motor vehicle under the influence of intoxicating liquor. Section 113 provides the following:

> "*Permitting unauthorized person to drive.*
>
> "No person shall authorize or knowingly permit a motor vehicle owned by him or *under his control* to be driven upon any highway of this State by any person who is not authorized to operate such motor vehicle under this article (emphasis supplied).
>
> "Violation of this section shall be deemed to be a misdemeanor * * *."

Inasmuch as Milton had custody and control of the Green vehicle, if he permitted William, an unauthorized person, to drive, this negligent and unlawful act would render Milton liable for the resulting damages. Both Milton and William had voluntarily engaged in the drinking party and both were under the influence of intoxicating liquor. As a person who aided and abetted the unlawful operation of the Green automobile, Milton was a principal in the unlawful operation. See *State v. Nall,* 239 N. C. 60, 65-66, 79 S.E.2d 354, 358 (1953); see also *Ferguson v. State,* 198 Miss. 825, 23 So. 2d 687 (1945); Annotation, *What constitutes driving, being in control of, or operating a motor vehicle within statute making such act, while intoxicated, an offense,* 47 A.L.R.2d 570, 586 (1956).

Milton earnestly contends that he is not responsible because he was so intoxicated that he was not capable of control of the motor vehicle. This novel argument is well answered by Mr. Justice Terrell of the Supreme Court of Florida in *Boggs v. Butler,* 129 Fla. 324, 325-26, 176 So. 174, 175 (1937)—a case in which a similar contention was made—as follows:

> "His defense savors of that of the young man in an early Florida case who contributed to the death of his parents but later, in an action affecting the tragedy, pleaded with the Court to be merciful to him because he was an orphan. * * *

"It would be a base and unjust distortion of the law to permit a defense of this kind to prevail. Boggs was on notice when he left Blountstown that he was traversing the public highways with a dangerous instrumentality. To hold that this notice ceased when he became drunk and unconscious not alone subjects the traveling public to untold dangers that there is no basis whatever for imposing on it, but it provides a way of escape for the reckless, wilful driver at the expense of the public. * * *

"In fine, Boggs went on the highway voluntarily, carried Peacock along voluntarily, drank with him voluntarily, they got drunk voluntarily, both spent the day drinking and carousing voluntarily, and wound it up by recklessly running into Butler's car, killing his (Butler's) wife, and seriously injuring Whittle. He (Boggs) now contends that his responsibility vanished the moment he became drunk.

"We are aware of no support for this doctrine."

Cf. *Kinnie v. Town of Morristown*, 184 App. Div. 408, 172 N.Y.S. 21 (1918).

The law generally is that one who intentionally or negligently becomes intoxicated must be held to the same standard of conduct so far as his torts are concerned as if he were sober. As Lord Coke observed: "A drunkard who is *voluntarius daemon* hath no privilege thereby; whatever ill or hurt he doth, his drunkenness doth aggravate it." More recently, Professor Prosser has stated:

"Whether intoxication is to be regarded as a physical or a mental disability is probably of no importance at all to anyone. On either basis, it is common enough; and it is uniformly held that voluntary or negligent intoxication cannot serve as excuse or absolution for acts done in that condition which would otherwise be negligent. One good reason is that such an excuse would be far too common and too easy to assert; another is that drunkenness is so anti-social that one who indulges in it ought to be held to the consequences.

It is sometimes said that such intoxication is negligence in itself; but this is scarcely correct, since a drunken man may still behave in a perfectly reasonable manner. The proper statement would seem to be that one who intentionally or negligently becomes intoxicated is held thereafter to the same standard of conduct as if he were sober." (W. Prosser, *Torts* § 32 at 157 (3rd Ed. 1964).)

It is clear that under the Maryland law if Milton had been sober, as the person having possession and control of the Green vehicle and present in that vehicle, he would be responsible for the negligent and unlawful operation of the vehicle by William. *Powers v. State,* 178 Md. 23, 28, 11 A. 2d 909, 911 (1940). See *Gray v. Citizens Casualty Co.,* 286 F. 2d 625, 627 (4th Cir. 1960) in which Chief Judge Sobeloff, for the Court, cited *Powers* with approval, followed it and summarized the Maryland law as follows:

"The effect of the Powers decision has been that under Maryland tort law, an owner because of his presumed control over his car when present though not physically handling the wheel, may be held liable in the event of a collision, to the same extent as if he were manually controlling or operating the vehicle. In such a case the negligence of the driver is said to be imputed to the owner. Wallace v. Fowler, 1944, 183 Md. 97, 36 A. 2d 691. However, an agency relationship is not necessary to be shown, for the failure of the owner, who is present, to exercise his presumed control makes him liable."

We cited *Gray* with approval in *Merritt v. Darden,* 227 Md. 589, 597, 176 A. 2d 205, 209 (1962).

See also *Snyder v. United States Mutual Ins. Co.,* 312 Ill. App. 337, 38 N.E.2d 540 (1941), holding that the term "operator" in an insurance policy provided coverage for the insured not only when he was personally behind the wheel as a driver, but also when he was in his automobile and retained control.

As Milton, although intoxicated, must be held to the same

standard of conduct as if he had been sober, he was liable for damages resulting from the operation of the Green vehicle even if William were personally at the wheel. The trial court, therefore, properly refused to grant the motions for a directed verdict and properly instructed the jury that if it found that Milton had been given control and possession of the automobile by the owner, Green, and both William and Milton were intoxicated and in the vehicle at the time of the collision and that William was driving, the verdict should have been against both William and Milton.

### (2)

Milton also contends that the trial court erred in charging the jury that William's negligence could be imputed to Milton, on the grounds that (a) there was a variance between the pleadings and the issue to be determined by the jury, and (b) the instruction was in error because Milton was not the owner of the vehicle involved in the accident.

### (a)

The amended declaration filed in the present case alleged the time and place of the accident and that the plaintiff Branscome was seriously and permanently injured when struck head-on by another automobile owned by Green "and negligently operated by his servant * * * William * * * or * * * Milton * * *, east on State Route 22 to the left of center on the wrong side of the road" and that the plaintiff's injuries were "caused by the negligence of * * * William * * * or * * * Milton * * *, as set forth above, and the negligence of * * * Green in allowing * * * William * * * or Milton" to operate the Green vehicle "when incompetent to do so and without a license (emphasis supplied)." These allegations were adopted in the case alleged on behalf of the plaintiff Minnick.

At a hearing in chambers on Milton's motion for a directed verdict at the end of the entire case, the trial court indicated three reasons for the rejection of the motion: (1) there was legally sufficient evidence *of Milton's negligence* to submit to the jury, (2) even if the jury should find that William was negligent and that his negligence was the proximate cause of the accident, the negligence of William is *imputed* to Milton

and the verdict should be against Milton as well as William, and (3) because Milton was negligent in *permitting* William to *operate* the automobile Milton had borrowed from Green. Counsel for Milton then excepted to the trial court's ruling as follows:

"Now, I respectfully except to that at this point, sir, as to the legally sufficient evidence, the negligence on the part of Milton O. Smith, there is none. There is evidence in the case, which is not substantive evidence, to the effect that Milton Smith was alleged to have said that he drove this automobile. This is in a conversation between Milton and his brother, William. There was objection to this testimony, sir, and it finally came in, it came out before the jury, and this is not substantive testimony as to the operation of the vehicle. It was by way of impeachment and therefore it is not legally sufficient evidence of negligence or of the operation of the automobile by Milton O. Smith. Now, Milton O. Smith has only been sued as negligently operating an automobile. There is no allegation in the declaration of negligent entrustment, because no one knows whether Milton Smith gave the automobile to his brother William Smith or whether William Smith merely took the keys out of Milton's pocket while he may have been passed out in the automobile. We are now entering into the realm of conjecture, because no one knows what happened at this point when William apparently got control of this automobile. Therefore, under that theory, I take my exception as to the negligent entrustment, for those two reasons. Now, as to the theory of imputation of negligence, Your Honor is now directing a verdict against Milton O. Smith in this case at this point, because you are now going to allow the jury to decide an issue of who was driving the car. If they find that Milton O. Smith was driving the car, then there would be no question but that he would be negligent in the operation of that automobile, if the jury finds that, and the only other alternative is that William Smith was driving. There-

fore, if the jury finds that William Smith was driving the automobile, you have already told the jury that the negligence of William Smith is imputed to Milton Smith. Therefore, you have effectively directed a verdict against Milton Smith at this time."

It will be observed that although counsel excepted to the trial court's ruling in regard to negligent entrustment because there was no allegation in the declaration of negligent entrustment, this reason was not assigned in regard to the theory of imputation of negligence. Nor did counsel for Milton object to the trial court's charge in regard to imputed negligence after the charge was given on the ground that there was a variance between the amended declaration and the proof and that the jury could not consider the evidence on which the imputation of negligence rested for that reason. There was an objection on the ground that the charge was "tantamount to a directed verdict against Milton * * *," but there was no mention of any question of a variance.

In our opinion there was no variance between the averments of the amended declaration and the proof. It is alleged that either William *or* Milton operated the Green vehicle on the wrong side of the road when "incompetent to do so and without a license." This allegation, cast in the alternative, is consistent with the proof in the case. There was evidence that Milton had possession and control of the Green vehicle and that he was driving it and obviously would be "operating" it. On the other hand, there was evidence that William was personally at the wheel, as we have said, but, even in this alternative factual situation, Milton would be "operating" the vehicle although not physically at the wheel. *Powers v. State, supra, Gray v. Citizens Casualty Co., supra,* and *Snyder v. United States Mutual Ins. Co., supra.* The averments of the amended declaration were sufficient to advise Milton of the nature of the plaintiffs' claim in regard to the operation of the Green automobile and he was not prejudiced at the trial by the evidence adduced by the plaintiffs. See *Hochschild, Kohn & Co., Inc. v. Murdoch,* 154 Md. 575, 580, 141 A. 905, 907-08 (1928). Cf. *Consolidated Gas Co. v. Connor,* 114 Md. 140, 159, 78 A. 725, 736 (1910).

In any event, the issue in regard to the alleged variance was not, in our opinion, under Maryland Rule 554 d, properly preserved for our consideration. As already indicated, there was no exception to the denial of Milton's motion for a directed verdict on the issue of *imputed negligence* because of any alleged variance, there was no motion to strike out certain evidence because of the alleged variance and, finally, there was no exception to the trial court's charge based on variance. There was also no request that the trial court instruct the jury that certain evidence could not be considered by it because of any alleged variance. Under these circumstances the variance point is not preserved for appellate review. Maryland Rule 885.

(b)

Milton earnestly contended below and before us that William's negligence could not be imputed to Milton because Milton did not *own* the Green automobile. Although undoubtedly ownership of a motor vehicle gives the owner the right to control the operation of that vehicle and if the owner is present in his automobile when driven by another, under ordinary circumstances the negligence of the driver may be imputed to the owner. *Powers v. State, supra.* This doctrine, however, is based upon the owner's *right to control* as an incident of his ownership of the vehicle.

As Judge Oppenheimer, for the Court, aptly stated in *Slutter v. Homer,* 244 Md. 131, 139, 223 A. 2d 141, 145 (1966) :

> "The doctrine of imputed negligence rests on the presumption that the non-driving owner had *the right to control the vehicle.* That presumption, as *Merritt* states, is rebuttable; *the presumption is based,* not on the actual exercise of control, but *on the right to exercise it.* The agency doctrine, on the other hand, rests on the relationship of the parties and the nature of the expedition during which the accident occurred. *Imputed negligence,* like agency, is based on the relationship, but *turns on the facts in respect of the right to control,* whereas the agency theory applies where it is pertinent, irrespective of the momentary right of

physical control. In short, the agency doctrine is predicated on a status rather than on inference of fact (emphasis supplied)."

The owner also has the right to transfer the right to control to another person and when he does this, the person having possession and the right to control, when present in the automobile may have the driver's negligence imputed to him because he then has the right to control and the power to control as if he were the owner in that situation. As Judge Pattison, for the Court, stated in *Bell v. State,* 153 Md. 333, 337, 138 A. 227, 228-29, 58 A.L.R. 1051, 1053 (1927), quoting with approval from 6 C. J. 1099:

> " 'The relation of bailor and bailee is to be distinguished from that of master and servant, in that property in the hands of a servant is in the possession and control of the master, the servant having only custody, *while in the case of bailment the possession and control of the property passes to the bailee* during the period of the performance of the contract (emphasis supplied).' "

See 9B Blashfield, *Cyclopedia of Automobile Law and Practice,* § 6053 at 521 (1954), where it is stated:

> "The control of an automobile by one other than the owner may be presumed under certain circumstances, as where a bailee rides beside another whom he has permitted to drive * * *."

See also *Feagles v. Sullivan,* 32 D & C (Pa.) 47, 48 (1938) where Judge Brown, Jr., for the Court of Common Pleas No. 2 of Philadelphia County stated:

> "The automobile in question was not owned by defendant. It was owned by his father, and he was only the bailee of it. This is, however, immaterial for 'a bailee, or person in possession or control of the conveyance, by whatever name he may be called, is as responsible for the negligence of his driver as if he

were the owner': *Kelton v. Fifer,* 26 Pa. Superior Ct. 603, 605-606."

Milton as the bailee of the owner, Green, had the right to control the Green automobile. He was given the power to exercise this right by the delivery by Green of the automobile keys to Milton. Milton was present in the automobile when William, without an operator's license and when intoxicated could have been found to have been the driver of the vehicle. William's undoubted (and undisputed) negligence can then be imputed to Milton and, as we have seen, Milton's intoxication will not excuse him from the same liability he would have had if he had been sober. The trial court committed no error in the portion of the charge in regard to imputed negligence, and the issue was fairly presented to the jury for its determination.

The appellant argues, however, that Judge Day's instructions have prevented the jury from considering the possibility that Milton was so totally unconscious prior to the outset of the trip that he was incapable of knowingly acquiescing in the undertaking of the trip, or in William's driving or of performing any other act upon which liability could be imputed to him. It is suggested that the jury could have found that after Milton passed out in the car, William removed the keys from his pocket, and that Milton never knew until the next day that he ever left the parking lot at Hannah Moore's. The appellant argues that this state of facts is distinguishable from the cases in which the defendant owner of an automobile voluntarily undertakes a drinking expedition, and then subsequently passes out, leaving someone else to do the driving.

We do not agree with this distinction. While the presumption of control of an owner who is present in the vehicle might be rebutted if it were shown, for instance, that the owner of the car was physically unable to exercise control for some reason other than drunkenness, or if his actual presence in the car were involuntary, we do not think that that is the case here. As we have stated, a drunken man is held to the same standard of care as if he were sober. Thus, had Milton been sober and present in the car, certainly, William's negligence would be imputed to him. Similarly, Milton cannot now claim that Wil-

liam took the keys out of his pocket for it is manifest that if Milton had been sober, he could have prevented just such an occurrence, or if he did not do so, he would be guilty of negligent entrustment in allowing William who was intoxicated and did not have a license to drive the automobile. We believe that, under the peculiar facts of this case, it was not error for Judge Day to instruct the jury as he did, and that, as a matter of law, if the jury found that William was driving and that Milton was in the car, and both were intoxicated, then there would be no state of facts under which Milton would not have been liable.

The trial court declined to present the case to the jury on issues as it had the right to do under Maryland Rule 560. This is a matter, however, within the sound discretion of the trial court and the submission of the case generally to the jury was not an abuse of the trial court's discretion.

The statements of the foreman of the jury that "we find William Smith to be the driver" and "we find Milton Smith guilty of negligence" were mere surplusage and the trial court properly entered general verdicts against Milton. No objections were made by Milton at the time the verdicts were returned, and no motion was made. Milton's motion to record the remarks of the foreman was not filed until after the hearing on his motion for a judgment n.o.v., or in the alternative, for a new trial. We find no error in the entry of the general verdicts against Milton and, in any event, any issue in that regard was not preserved for our consideration. Maryland Rules 554 d and 885.

*Judgments affirmed, the appellant to pay the costs.*